[Civ. No. 2229.   Third Appellate District.—February 4, 1921.]

FRANCIS M. HEENAN et al., Appellants, v. JAMES BEVANS, Respondent.

[1] EASEMENT — RIGHT OF WAY — TITLE BY PRESCRIPTION — INSUFFI-CIENCY OF EVIDENCE.—In this action involving the question as to whether the plaintiffs had acquired an easement across the land of defendant for a road by prescription, there is not only a pro-nounced conflict upon the question, but also there is ample justifica-tion from the evidence for the finding against the existence of such right in the plaintiffs.

[2] PRESCRIPTION—EVIDENCE—BURDEN OF PROOF.—Title by prescription or adverse user necessarily rests in presumption, which is the basic foundation of such a title to land, and, in establishing such a title, the presumption that the title to the land is in the owner of the paper title thereto and that the use of the roadway was by permission or silent acquiescence must be overcome by clear proof that the claim of the right of way not alone existed in the minds of those claiming such right but that such claim was asserted in such manner as that the owner of the land might or ought to know of it.

[3] HIGHWAY—MAINTENANCE OF GATES—REBUTTAL OF DEDICATION.— The maintenance of gates at each end of a roadway is strong evi-dence in support of a mere license to the public to pass over the designated area, and in rebuttal of a dedication to public use.

APPEAL from a judgment of the Superior Court of Yuba County.  Eugene P. McDaniel, Judge.  Affirmed.

The facts are stated in the opinion of the court.

3. Leaving bars or gates for convenience of neighbors when fen-cing land, as affecting the acquisition of easement of way by pre-scription, note, 35 L. R. A. (N. S.) 941.

W. H. Carlin for Appellants.

W. E. Davies for Respondent.

HART, J.—This is an appeal by plaintiffs from a judgment ·rendered by the court without a jury in favor of defendant. The controversy arises over a purported easement, or right of way, claimed by plaintiffs, over the land of the defendant.

The only question to be decided in the case is: Have the plaintiffs acquired an easement across the land of defendant for a road by prescription? It is the claim of appellants· that the findings of the trial court are against the evidence.

The facts may be summarized as follows: On the eleventh day of February, 1919, plaintiffs filed in the superior court of the state of California, in and for the county of Yuba, their complaint, from which we quote the essential paragraphs 1 and 2, as follows:

"I. That plaintiff Francis M. Heenan now is, and for more than ten years last past he has been the owner in fee of that· certain tract or parcel of land situate and being in the County of Yuba, State of California, described as follows: The West one-half and the Northeast quarter of the Southwest quarter and the Southeast quarter of the Northwest quarter of Section Twenty-three (23), Township Fifteen (15) North, Range Four (4) East, M. D. M., containing approximately 160 acres; and plaintiff James P. Heenan during a period of approximately eleven years prior and up to the date of the commencement of this action has been, and now is, in the possession, use and enjoyment of said lands and premises under and by virtue of a lease from said Francis M. Heenan, the period of which will not expire until on or about the 1st day of October, 1920. That said lands are agricultural lands and for more than twenty years last past have been and now are being used for the purpose of growing thereon wheat, barley and similar grain.·

"II. For more than twenty years prior and up to the date of the commencement of this action there has been, and now is, constructed, maintained, and prior and up to the wrongful acts of defendant hereinafter referred to, used by plaintiffs and their predecessors in interest in and to said lands and premises hereinbefore referred to, upon

and along the north sixteen feet of the southeast quarter of said Section Twenty-three (23) a road over which during all of said times plaintiffs and their predecessors in interest in and to said lands and any and all persons and the public generally traveled from a County Road extending along the east line of said Section Twenty-three (23) over, to and upon plaintiffs' said lands in the southwest quarter of said Section Twenty-three (23) and thence southerly to another County Road running along the south line of said quarter section openly, publicly, notoriously and adversely without let or hindrance and under claim of right so to do. That said road during all of said times herein mentioned was and now is of great value to plaintiff's said lands as furnishing a ready, convenient and useful means of communication between plaintiffs' said lands and said County Road running along the said easterly line of said Section Twenty-three. That said road has been heretofore used as aforesaid with gates at each end thereof, namely, one at the east line of said Section Twenty-three and the other at the southerly line of said Section, that is, at each point where said road enters said County Road as aforesaid. And on or about the 1st day of December, 1918, defendant did willfully and wrongfully enter upon said road where it passes along the northerly portion of said southeast quarter of said Section Twenty-three and did plow up the same, and he did also remove the said gates theretofore maintained at the said east line of said Section Twenty-three and substituted in place thereof four barb-wires thereby rendering the said road impassable and preventing entry thereupon from said County Road to the east of said Section. And defendant threatens to and plaintiffs are informed, believe and therefore allege that unless restrained by this Court he will continue to keep plowed up said road at said place aforesaid and keep said entrance thereto barred and wired and prevent plaintiffs and all other persons from using the same."

It will thus be observed that the action involves section 23, township 15 north, range 4 east, M. D. M., Yuba County, California. It may be explained that the defendant had been for about five years the owner of the northeast quarter of the section and that in October, 1918, he purchased the southeast quarter of the section. The road in question commences at the east line of the section, is six-

teen feet in width, its north boundary being the line dividing the section into north and south halves. It extends over the southeast quarter owned by defendant, also across the northeast quarter of the southwest quarter owned by plaintiffs, thence turns southerly and is bounded on the east by the line dividing the southwest quarter into east and west halves and extends to the south line of the section. A county road extends along both the east and south lines of this section 23. This county road leads to Marysville. This road furnished access to the county road at two points on the section and the judgment prevents the use of that portion of the road only which leads to the highway on the east line of the section.

Defendant filed an answer to the complaint, in which, *inter alia,* he sets up, "that for a number of years plaintiffs . . . by permission of defendant and his predecessors in interest, have occasionally traveled across the north sixteen feet of said quarter section. . . ."

The trial court found the ownership of plaintiffs' and defendant's several tracts of land to be as alleged in the complaint, found the existence of the road as therein set forth, but found that the use of said road on the part of plaintiffs and their predecessors in interest had been a permissive one and not adverse, and judgment followed accordingly. Paragraph 5 of the conclusions of law, found in the transcript, contains the essence of the court's findings and reads as follows: "That the use of plaintiffs and other persons during the last twenty years of the said North sixteen feet of the southeast quarter of said section twenty-three has been an uninterrupted permissive use, resting for its enjoyment upon the neighborly spirit of kindness and accommodation existing between plaintiffs' and defendant's predecessors in interest, and that said use has not been adverse or hostile to defendant or his predecessors in interest in said lands, either openly or notoriously to their said title, nor has said use been under any claim of right by said plaintiffs, or either of them or any other person."

It is, of course, manifest from the allegations of the complaint above reproduced that the plaintiffs claim an easement in the form of a right of way over defendant's land by prescription, and it is their contention here that the evidence without conflict shows a prescriptive title in them

to such easement. The latter proposition involves, obviously, an attack upon the finding of the trial court that the plaintiff has no title by prescription or otherwise to the alleged easement over the strip of land in dispute.

We may first with propriety state the principles of law by which the courts are required to be guided in determining whether the elements of prescription are shown by the evidence to be present in a given case, and this can be the more conveniently done by reproducing herein a few excerpts from the well-considered case of *Clarke* v. *Clarke*, 133 Cal. 667 et seq., [66 Pac. 10]. In that case the defendant, in an action by the plaintiff to quiet title to a strip of land there in dispute, set up the defense of title to a right of way over said strip of land by adverse user and alleged in his answer "that he, and those claiming under him, have for more than eight years last past traveled with vehicles and on foot over a certain right of way across the lot, claiming the right to travel the same, adversely to plaintiff; that he has never, during said time, been interrupted in the use of said right of way, and that plaintiff, during all of said time, had full knowledge of the said travel." The supreme court, in sustaining the decree quieting plaintiff's title to the lot over which the right of way was claimed, thus stated the law applicable to claims of title to land by adverse user or prescription: "Prescription, at common law, was a mode of acquiring title to incorporeal hereditaments by immemorial or long-continued enjoyment. It had its origin in a grant evidenced by usage, and was allowed on account of its loss, either actual or supposed, and for this reason only those things could be prescribed which could be created by grant. The presumption of the grant of an easement in the lands or over the lands of another is sometimes indulged. When so, it is upon the ground that the owner of the land has submitted to the use without objection for such length of time that his conduct cannot be accounted for upon any other hypothesis. The acts done by the party claiming the benefit of the presumption, and his predecessors in estate, must, however, have been, in themselves, such as the other party, having the right to object to or complain of, did neither, but submitted to them without objection or challenge. (*Hanson* v. *McCue*, 42 Cal. 303, [10 Am. Rep. 299].) The law will not allow the land of

one person to be taken by another, without any conveyance or consideration, upon slight presumptions or probabilities. (*Niles* v. *Los. Angeles,* 125 Cal. 576, [58 Pac. 190].) The burden is upon the party who claims title by prescription to clearly prove by competent evidence all the elements essential to such title. The user must have been adverse to the true owner and hostile to his title. It must have been actual, continued, open, and under a claim of right. It must have all the elements necessary to acquire title by adverse possession. (*Thomas* v. *England,* 71 Cal. 459, [12 Pac. 491].)''

Again, in the same case, the court further said: ''The defendant and his tenants were in the habit of passing over the uninclosed strip of land when going to or from their business. The question as to whether or not the use was under a claim of right, or a mere matter of neighborly accommodation, was a question of fact to be determined by the court in the light of the relations of the parties, their conduct, the situation of the property, and all the surrounding circumstances. The court below saw the witnesses, heard them testify, and found the facts against defendant. Defendant testified that he used the way and claimed the right to use it, but it does not appear that any such claim was ever made to plaintiff or to his grantor. It is not sufficient that the claim of right exist only in the mind of the person claiming it. It must in some way be asserted in such manner that the owner may know of the claim. The fact that the owner knew of the travel and occasional use of the property does not even raise a presumption that such use was hostile or under claim of right. If any party who is allowed by silent permission to pass over the lands of another, nothing being said as to any right being claimed, after five years, without showing that he ever communicated such claim in any way to the owner, can thus gain title by prescription, it would be a blot upon the law. An owner could not allow his neighbor to pass and repass over a trail upon his open, uninclosed land without danger of having an adverse title successfully set up against him. If he had several neighbors who so used the land, several separate titles to rights of way might thus be acquired. The law will presume that the land belongs to the owner of the paper title, and that the use was

by permission or silent acquiescence. If this presumption is overcome by evidence showing the use to have been hostile, and that the owner knew of such hostile claim, and took no steps to protect his property, for a period of five years, then the presumption changes.'' (See, also, *Abbott* v. *Pond,* 142 Cal. 393, 398, [76 Pac. 60].) ·

[1] Adverting now to the proofs as they are disclosed by the record, we may, *in limine,* remark that our examination of the testimony has convinced us that therein there is not only a pronounced conflict upon the question whether the plaintiffs have acquired a prescriptive right to the alleged easement over the defendant's land, but also there is ample justification from the evidence for the finding against the existence of such right in the plaintiffs. ·

The plaintiff Francis M. Heenan gave some testimony which was in a measure corroborated by other witnesses testifying for the plaintiffs, from which, taken alone, the conclusion that the road in question had been used by himself and neighbors openly and notoriously, under a claim of right, for a period of approximately thirty years might be warranted, depending, of course, upon whether the trial court should have regarded it of a character in probative value justly to compel such a conclusion. He testified that he had resided in the neighborhood in which the way is located for forty-three years; that, from his earliest memory as a boy, he could say that there had been a road running over and across the strip in question and that it had been habitually used by his predecessors in interest in his land and by other people residing near his ranch and by the school children attending the district school in that vicinity for at least thirty years; that he and others had during all those years claimed the right to use the road and had used it with the knowledge of the defendant and his predecessors in interest; that, on one occasion, he did a little work on the road; that at each end of the road there had always been maintained a gate, but he could not say who placed the gates there. He, however, admitted, on cross-examination, that there was another road about a half a mile in length, leading from his place to the county road, and over and by means of which he and his neighbors could reach the county road. He declared, though, that it was more convenient for him and his neighbors to go to

and from their respective ranches to the county road by the way in question. He also admitted that, about three years prior to the trial of this action (the action was tried in the year 1918), he called on Mrs. Divver, the grantor and predecessor in interest of defendant in the land over which the alleged right of way is claimed and before Mrs. Divver conveyed the land to defendant, and asked her for a deed conveying to him the right of way over the strip of land in dispute, but that Mrs. Divver refused to give him the deed.

As against the testimony presented in behalf of the plaintiffs, and of which the above is a brief statement in substance, the defendant, testifying for himself, said that he purchased the 160 acres of land across which the alleged right of way extends from Mrs. Mary J. Divver in the year 1918 and immediately thereupon took possession of the property; that he had never seen what might properly be called a road running along and over the strip of land in question, but that he did observe a "kind of trail" or track there; that there was a gate at each end of said trail or track, but neither was a substantial structure; that he had resided in the vicinity of the land he bought from Mrs. Divver for "the last five years," but that he never knew nor had he ever heard that there was a right of way across said land, nor did he know or ever hear that any one ever claimed such a right of way. He stated that he never saw any persons but the Heenans use the road. He further testified that he bought the Divver quarter-section for the reason that the natural drainage of his other land (the quarter-section north of the Divver land) runs south, and that to drain the north section it is necessary for him to run the drain toward the county road and consequently toward the alleged right of way. He testified that he would not have bought the Divver place but for the fact that he desired the drainage for the north section. (This testimony is important only in that it tends to show that, although he had resided in the immediate neighborhood of the Divver quarter-section for five years or more, he had not known of the existence of a right of way over the latter land or never had heard that anyone claimed such a right of way.)

In connection with the defendant's testimony the deed from Mrs. Divver conveying to the defendant the southeast

quarter-section was offered and received in evidence. The deed makes no reservation of the right of way over the strip of land in controversy.

Mrs. Mary Divver, who sold the land directly involved herein to defendant, testified, in part, as follows: "Q. During the time you had possession of that property, was there ever a roadway constructed across the north sixteen feet of your property running from east to west? A. Well, about three years ago Mr. Hennan asked permission to go through there as a short cut to his place. Q. Of whom did he ask permission? A. Asked me. Q. Did you give him permission? A. Yes. I gave him permission providing the people who had it leased at that time, Mr. George Carr, did not object. Q. Now, do you know of any claim that was made by any person to a right of way across your property located in S. E. quarter of section 23, township 15, north, range 4 east? A. Any claim? Q. Yes. A. No. Q. Did anybody at any time claim to own the right of way on that property? A. No." The witness further testified: That no person except Francis Heenan ever sought to obtain permission from her to cross the said property; that no other person ever spoke to her about crossing the property, "if so it is so far back I don't remember"; that she was positive that it was "three years ago" that the plaintiff Francis Heenan asked her permission to cross on the north sixteen feet of said property; that during the time she owned the property she paid the taxes on the 160 acres. "Q. Do you know if the general public has ever used that road, if there is such a road, across your property? A. Well, I know that on different occasions my husband and I have gone out there and found the fences down; that was before I was asked permission; he always put the fence up; no one had asked us. Q. You have always repaired and maintained the fence across and around your property? A. Well, as a rule, the people who rent have. Q. That is what I mean? A. Yes. Q. But, with the exception of the permission that you state you gave to Francis Heenan three years ago you have not given anybody this permission to cross that property? A. No. Q. And you have not permitted anybody to your knowledge to use it as a public highway? A. No. Q. Now, on the twenty-first day of October, 1918, you conveyed this property to Mr. James Bevans, did you

not, that is, the southeast quarter of section 23, township 15 north, range 4 east? A. Yes. Q. Did you at that time reserve any right of way on the property? A. No. Q. Then you conveyed the whole 160 acres without any reservation whatever? A. Yes." On cross-examination the witness stated that the permission given to Francis Heenan to use the roadway was not in writing, but merely verbal; that Heenan wrote "to us once and asked us to sell him the road, but we said no"; that no other person had ever asked permission to use the road or for a deed to the strip over and across which it passed; that she and her husband used to visit the part of the section where the road is located about three times a year; that, while there was some evidence of its having been used by somebody, it did not "show very much evidence of traffic, that is having been traveled over."

There is absolutely no evidence and, indeed, no claim made by the appellants that a grant of a right of way across the land in question was ever given to any person. And there is no evidence or a well-founded pretense that the owners of the property, either the defendant or his predecessors, ever dedicated the strip of land in dispute to the public as a highway. It follows, then, that, as stated above, the sole issue here is whether the alleged easement exists by virtue of adverse user. As to this proposition, we have already declared that the finding of the trial court that no such right existed or was shown derives support from the evidence. Indeed, we do not hesitate to say that, although a finding, had the court so found, of adverse user upon the evidence presented by plaintiffs might be secure against successful challenge, yet upon that evidence alone, or in the absence of the adversary showing by the defendant, the court could justly or reasonably have found against the claim of a prescriptive title to the land in dispute, since, as the above cases show, [2] title by prescription or adverse user necessarily rests in presumption, which is the basic foundation of such a title to land, and, in establishing such a title, the presumption that the title to the land is in the owner of the paper title thereto and that the use of the roadway was by permission or silent acquiescence must be overcome by clear proof that the claim of the right of way not alone existed in the minds of those claiming such right

but that such claim was asserted in such manner as that the owner of the land might or ought to know of it. (*Clarke v. Clarke, supra.*) It is not clear from the evidence produced by the plaintiffs that the predecessors in interest of the defendant or the latter ever knew or supposed that the use of the strip of land in dispute was being used under a claim of right or in hostility to their title. This proposition is supported by the admission of one of the plaintiffs that, on an occasion about three years anterior to the date of the trial, he undertook to secure from Mrs. Divver a deed of conveyance to the strip embracing the roadway.

But, even if it be conceded that upon the testimony presented by the plaintiffs, considered alone or without reference to any impeachment thereof by an adversary showing a judgment in their favor could well be sustained, it is still justly to be observed that upon no rational theory can there reasonably arise in the mind of any person any doubt that the testimony presented on behalf of the defendant, of which we have above given an epitomized statement, shows that the use of the road in question was entirely under a license from the owners of the land over which it passes. At any rate, such must be the view of this court, since the trial court so declared in its decision, thereby accepting as verity said testimony.

Recapitulating, briefly, that testimony, we find this to be the situation: That the road was not used by the general public; that it was fenced in; that at either end thereof was a gate placed there by the predecessors in interest of the defendant; that the owners of the property—the former as well as the present—had always paid taxes on the full quarter-section or 160 acres. But, beyond all these considerations, is even the more significant testimony of Mrs. Divver (corroborated in a measure by that of one of the plaintiffs) showing, or, at least strongly tending to show, that the plaintiffs themselves never actually supposed that a right of way had ever been established over the property by prescription or otherwise, for one of the plaintiffs, about three years prior to the date of the trial of this action, asked, and was given by Mrs. Divver, permission to use the roadway and later undertook to secure a conveyance from

her of so much of the land in the quarter-section involved herein as was necessary for the purposes of the roadway.

[3] The fact that at each end of the roadway a gate had been maintained by the predecessors in interest of the defendant for all the years that the road had been used is of no inconsiderable significance as confirming the proposition that the owners of the property never understood or knew that the use of the road was hostile to their title or under a claim of right. Indeed, such fact "has always been considered as strong evidence in support of a mere license to the public to pass over the designated area, and in rebuttal of a dedication to public use." (*Anderson* v. *Quinn,* 70 Cal. 454, [11 Pac. 746]; *Huffman* v. *Hall,* 102 Cal. 27, 30, [36 Pac. 417]; *Hope* v. *Barnett,* 78 Cal. 14, [20 Pac. 245]; *De La Guerra* v. *Streidel,* 159 Cal. 85, [112 Pac. 856]; note to 35 L. R. A. (N. S.) 941.)

Another fact of more or less significance in support of the mere permissive use of the road is the payment of the taxes by the predecessors in interest of the defendant on the full quarter-section. This testimony goes solely to the question whether an easement was for years exercised or enjoyed on the quarter-section involved herein in hostility to the title of the owners of the property, under a claim of right, and with the knowledge and acquiescence of the latter, for it is not probable that, if one had knowledge of such an easement, the existence and enjoyment of which would deprive him of the actual enjoyment of a considerable part of his land, he would pay taxes on the whole tract, including the strip the entire title to which was not in him.

But, without any further attempt at analyzing the testimony, it is sufficient to repeat that the testimony presented by the defendant, accepted, as it was, by the court as revealing the truth of the issue before it, was obviously sufficient to justify the finding that the use by the plaintiffs and other persons of the roadway in question during the last twenty years "has been an uninterrupted permissive use, resting for its enjoyment upon the neighborly spirit of kindness and accommodation existing between the plaintiffs and the defendant's predecessors in interest, and that said use has not been adverse or hostile to defendant," etc. (*Tarpey* v. *Vith,* 22 Cal. App. 289, 292, [134 Pac. 367];

*Franz* v. *Mendonca,* 131 Cal. 205, 208, 209, [63 Pac. 361];
*Schulenbarger* v. *Johnstone,* 64 Wash. 202, 35 L. R. A.
(N. S.) 941, 116 Pac. 843].)
    The judgment is affirmed.

    Prewett, P. J., *pro tem.,* and Burnett, J., concurred.