[Civ. No. 2622. Third Appellate District.—January 5, 1924.]

## J. W. COSTELLO, Respondent, v. W. W. SHARP, Appellant.

[1] Easements—Private Right of Way—Quieting Title—Inconsistent Defenses.—In an action to quiet title to a right of way, the contention by defendant that plaintiff's use of the way in question was purely permissive and as a neighborly accommodation is inconsistent with the contention that the road became a highway upon the presumption of its dedication as such from immemorial or the statutory prescriptive use thereof by the general public or became such in the manner indicated by section 2619 of the Political Code; but the defendant is at

liberty to interpose, as in impeachment of the claim of plaintiff to title to the way by prescription, as many defenses as he sees fit, however inconsistent they might be.

[2] Id.—Character of Road—Question of Fact—Evidence—Finding—Appeal.—In such an action, whether the road in dispute was or is a county road or a private way or neither is a question of fact for the trial court to resolve, and its decision of the question must remain undisturbed unless the testimony from which its conclusion has been derived is palpably unbelievable or the appellate court is forced to say from the face of the testimony that it is intrinsically lacking in the requisite strength to support it.

[3] Id. — Prescriptive Title — Essential Elements — Burden of Proof.—To establish an easement in the lands of another by prescription, it must be made to appear that the party claiming the easement has been, for the statutory period of five years, in actual possession and use of the easement and has held such possession openly, continuously, and notoriously, not clandestinely, and that it has been held hostile to the title of the owner of the land in which the easement is asserted, under a claim of title, exclusive of any other right, as one's own; and upon the party claiming the easement by prescriptive title rests the burden to clearly prove by competent evidence all the elements essential to the establishment of such title.

[4] Id.—Prima Facie Showing—Rebuttal.—When the plaintiff, claiming the easement by adverse user, has made a *prima facie* showing of a prescriptive title to the easement, then it is incumbent upon the defendant, by sufficient affirmative proof, to show that the use has been by virtue of a license or permission, or any other defense which would destroy the *prima facie* showing of title made by the plaintiff; and, upon a *prima facie* showing of title by the plaintiff, it is solely the province of the trial court to determine whether the same has or has not been overcome or dispelled by evidence presented by the defendant.

[5] Id. — Evidence — Circumstances Surrounding Usage—Province of Court or Jury.—A prescriptive title to an easement may be established by or implied from circumstances under which the use of such easement was enjoyed; and the question is one for the jury, or for the court sitting as such, to determine as a fact, in the light of the relations between the parties and all the surrounding circumstances.

3. Acquisition by prescription of right of way over uninclosed land, notes, 1 A. L. R. 1368; 2 A. L. R. 1368.

4. Burden of showing that use upon which an easement by prescription is claimed was permissive, and not under claim of right, notes, 8 L. R. A. (N. S.) 149; 44 L. R. A. (N. S.) 98.

[6] Id.—Character of Road—Declarations of Plaintiff.—In an action to quiet title to a private right of way by prescription, while testimony that plaintiff had made declarations that the road was a county road is admissible as tending to impeach his testimony that he always claimed title to a private way over the road, such alleged declarations amount to no more than a legal conclusion and cannot perform the office of substantive proof of the legal character of the road.

APPEAL from a judgment of the Superior Court of Siskiyou County. C. J. Luttrell, Judge. Affirmed.

The facts are stated in the opinion of the court.

B. K. Collier and J. P. McNamara for Appellant.

Chas. E. Johnson for Respondent.

HART, J.—This is an action to quiet title to a right of way. The plaintiff and the defendant are the owners of adjoining ranches. The plaintiff's ranch is known and referred to in the testimony as the "Marion ranch," one Joe Marion being the plaintiff's grantor or immediate predecessor in interest. The defendant's ranch is known and likewise referred to as the "Benton ranch," one Colonel Benton having, a trifle over four years prior to the trial of this action, conveyed the same to the defendant.

The plaintiff claims an easement in a certain portion of the land of the defendant in the nature of a right of way, extending from his ranch to a point on the north side of a public or county road leading from the town of Fort Jones to the town of Gazelle, in Siskiyou County, and which is known and designated in the pleadings, the testimony and the findings as the "Moffit Creek-Gazelle wagon road." The right of way in question is alleged in the complaint to be twenty feet wide, the same being ten feet on each side of a center line specifically described in the complaint. The complaint alleges that the plaintiff "is now and for the past twenty years immediately preceding the filing of this complaint, he has been, the owner, and the predecessors in interest of plaintiff were for the period of thirteen years or more immediately preceding the ownership of this plaintiff, the owners, in possession, and entitled to the possession of" a private right of way over the lands

of the defendant from his (defendant's) ranch to the above-named county road, describing the same. It is alleged that "defendant claims to be the exclusive owner of said way and has obstructed the said right of way so that plaintiff cannot use the same, which claim, as against plaintiff, is without right."

The prayer is that defendant be required to set forth the nature of his claim, that the same be determined by the court, and that it be decreed that the plaintiff is the owner of the right of way described in the complaint and for an injunction enjoining the defendant and all others from obstructing or otherwise interfering with said way.

The defendant, in his answer, denies the allegations of plaintiff's ownership of a right of way over his (defendant's) lands and admits that he claims to be owner of "all of his own land and of said purported way," and that he has obstructed the same; denies that "plaintiff cannot use the same, and, in this connection, states the fact to be that he has given plaintiff permission to use said purported way and to pass over his said lands as long as plaintiff will close the gates thereon."

The court's findings are in accord with the averments of the complaint, except in so far as is concerned the width of the right of way, as to which it was found:

"That plaintiff is owner and entitled to a private way over the lands of the defendant, sixteen feet wide, being eight feet on each side of the center line described in paragraph 1 of these findings, the said width of said private right of way being sufficient for the convenience or use by said plaintiff to pass and repass on foot, with teams, wagons and automobiles."

The conclusions of law and the judgment consist with the findings. The injunctive element of the decree is both mandatory and prohibitory.

The defendant appeals from the said decree or judgment, upon a record made up according to the alternative method.

The general contention is that the findings are not supported by the evidence. The specific contentions are that the testimony shows that plaintiff's acts and conduct are incompatible with the claim of the acquisition of a private right of way by prescription; that plaintiff's use of the road or way in controversy was by the permission of the de-

fendant and his predecessors in interest; that the said road became a public highway by virtue of the terms of section 2619 of the Political Code, and that, therefore, the plaintiff could not acquire a private right of way over said road by prescription. The section of the Political Code referred to provides:

"Whenever the franchise for any tollbridge, trail, turnpike, plank, or common wagon-road has expired by limitation or non-user, such bridge, trail, turnpike, plank, or common wagon-road becomes a free public highway; and no claim shall be valid against the public for right of way, or for the land, or material comprising such bridge, trail, turnpike, plank, or common wagon-road. All public highways, once established, shall continue to be public highways until abandoned by order of the board of supervisors of the county in which they are situated, or by operation of law, or judgment of a court of competent jurisdiction."

[1] The contention that the plaintiff's use of the way in question was purely permissive and as a neighborly accommodation is inconsistent with the contention that the road in dispute became a highway upon the presumption of its dedication as such from immemorial or statutory prescriptive use thereof by the general public or became such in the manner indicated by the above section of the Political Code, since if it is a highway or county road, by whatsoever means it became such, the plaintiff's use thereof was, in common with the public, as a matter of right and not of grace or by the permission of the owner of the lands over and through which it runs. The defendant, though, was at liberty to interpose, as in impeachment of the claim of plaintiff to title to the way by prescription, as many defenses as he saw fit, howsoever inconsistent they might be.

[2] Obviously, whether the road in dispute was or is a county road or a private way or neither is a question of fact which it was for the trial court to resolve, and its decision of the question must remain undisturbed unless the testimony from which its conclusion has been derived is palpably unbelievable or we are forced to say from the face of the testimony that it is intrinsically lacking in the requisite strength to support it.

[3] It is well understood that it is essential, to establish an easement in the lands of another by prescription, that all

the elements necessary to acquire title by adverse possession must be shown to exist. It must, therefore, be made clearly to appear that the party claiming the easement has been, for the statutory period of five years (sec. 318, Code Civ. Proc.), in actual occupation or possession and use of the easement, and held such possession openly, continuously, and notoriously, not clandestinely; that it has been held hostile to the title of the owner of the land in which the easement is asserted, and under a claim of title, exclusive of any other right, as one's own. (*Thomas* v. *England,* 71 Cal. 456 [12 Pac. 491]; *Clarke* v. *Clarke,* 133 Cal. 667 [66 Pac. 10]; *Pyramid Land etc. Co.* v. *Scott,* 51 Cal. App. 634, 646 [197 Pac. 398]; *Ricioli* v. *Lynch et al., ante,* p. 53 [223 Pac. 88].) And upon the party claiming the easement by prescriptive title rests the burden to clearly prove by competent evidence all the elements essential to the establishment of such title. (*Clarke* v. *Clarke,* 133 Cal. 667 [66 Pac. 10]; *Pyramid Land etc. Co.* v. *Scott,* 51 Cal. App. 634, 646 [197 Pac. 398]; *Ricioli* v. *Lynch et al., supra.*) [4] On the other hand, when the plaintiff, claiming the easement by adverse user, has made a *prima facie* showing of a prescriptive title to the easement, then it is incumbent upon the defendant, by sufficient affirmative proof, to show that the use has been by virtue of a license or permission, or any other defense which would destroy the *prima facie* showing of title made by the plaintiff. (*Fleming* v. *Howard,* 150 Cal. 28, 30 [87 Pac. 908]; Washburn on Easements, 4th ed., p. 156; 14 Cyc. of L. & P. 1147; *Kripp* v. *Curtis,* 71 Cal. 66 [11 Pac. 361]; *Franz* v. *Mendonca,* 131 Cal. 209 [63 Pac. 361]; *Guernsey* v. *Antelope Creek etc. W. Co.,* 6 Cal. App. 387 [92 Pac. 326]; *Yuba Cons. Goldfields* v. *Hilton,* 16 Cal. App. 229 [116 Pac. 712, 715]; *Thomas* v. *England,* 71 Cal. 457 [12 Pac. 491]; *Ricioli* v. *Lynch et al., supra.*) And, upon a *prima facie* showing of title by the plaintiff, it is solely the province of the trial court to determine whether the same has or has not been overcome or dispelled by evidence presented by the defendant.

By the foregoing principles, the testimony received in the case must be considered. At the outset it is just as well to say that a careful review of the evidence has convinced us that there is no justification for holding that, as

a matter of law, the findings do not derive sufficient support from the evidence.

The plaintiff acquired the land to which the road in dispute leads from the county road mentioned in the month of May, 1901, from one Joe Marion, and from that time down to the trial of this action, in the month of May, 1923, owned and, with the exception of a brief period during which he was engaged in erecting a new home for residential purposes, resided with his family thereon. This covered a period of twenty years. Other than plaintiff and members of his family, there were eight witnesses, residents of the neighborhood of the Costello and Sharp ranches practically all their lives, who testified that the road in question was and had been for upward of forty years a well-defined road; that they had themselves traveled over it in going to the Costello ranch and had often seen the plaintiff passing back and forth over it, sometimes hauling wood and hay on said road. Marion, the predecessor in interest of the plaintiff, testified that, during the greater part of the thirteen years he owned the Costello place, a man named Benton owned the defendant's ranch; that during all those years he (Marion) exclusively used the road in dispute for the purpose of going from and to his (now the Costello) ranch; that Benton, then owner of the Sharp ranch, knew that he (Marion) was using said road; that, while he never had any conversation with Benton on the subject, the latter never at any time made any objection to his (Marion's) use of the road, or denied his right to use it, nor did he ever erect a fence or put any other obstruction on or in the road; that he was still using the road when he transferred his land to the plaintiff, and never knew of any obstruction being put in the road until within a couple of years before the trial of the present action, when, on one or two occasions, he observed that a fence and some gates had been erected thereon. He testified that, within a few weeks prior to the trial, he saw the road in question and that it was the same road he had always used when he owned the Costello ranch.

Frank Sharp, a brother of the defendant, testified that he had known the road for upwards of twenty years; that it was a well-defined wagon road; that he never knew of any obstruction being placed in the road until in very

recent years, when a controversy arose between plaintiff and defendant upon the question whether the road constituted a private or any way.

The plaintiff testified that the road in dispute was in existence and a well-defined wagon road when he acquired and took possession of the Marion ranch; that he had used said road exclusively, under a claim of right from the time he acquired his ranch from said Marion until the time of the trial; that, for a number of years after he became the owner of said ranch, Colonel Benton was the owner of and resided on the ranch now owned by the defendant; that Benton knew that he (plaintiff) was using said road and no other in going from and to his ranch; that Benton never made any objection to such use of the road by plaintiff, and, in fact, never discussed the matter of the use of the road with him; that the road was in existence and being used by him (plaintiff) when defendant bought and took possession of the Benton ranch; that his use of the road was, for twenty years, continuous, and his right to its use was never in all that time questioned until a couple of years after the defendant became the owner of the Benton ranch; that defendant, about four years prior to the trial, erected a fence across the road, but left an opening therein of sufficient size to admit of the passage through it of a wagon or an automobile; that later and within a year or two of the date of the trial, the defendant closed the opening by placing a gate therein; that plaintiff thereupon cut an opening in the fence so that he could pass through; that he (plaintiff) often did repair work on the road and kept it in a condition for his usual use of it; that defendant at all times knew that he used the road in going from and to his farm, himself assisted the plaintiff in moving to his ranch immediately after he acquired it, and in so doing passed over said road; that, on one occasion, the defendant offered to build him (plaintiff) another road connecting with the Moffit Creek-Gazelle county road and leading to his ranch, but that he (plaintiff) made no reply to the proposition. The plaintiff further testified that, after the defendant erected a fence across the road, he made a complaint to the district attorney about the obstruction of the road, and that he was advised by that official to bring the matter to the attention of the board

of supervisors; that the district attorney, in an informal way, brought the matter before the board, and the defendant was thereupon notified by said board to appear before it and present reasons for his action in closing the road; that a hearing was subsequently had and the said board thereupon notified the defendant in writing that the road was a public or county highway and at the same time ordered him to remove the fence from across the road and not to obstruct it so as to prevent its use by the public.

The plaintiff's wife and also two sons, one of the latter being nineteen and the other twenty years of age, corroborated the plaintiff's testimony as to the continuous and uninterrupted use of the road by plaintiff for twenty years (by the wife) and (by the sons) for about fifteen years.

The defendant, testifying in his own behalf, admitted that the road was in existence and was being used by plaintiff when, some four years previously to the trial, he (defendant) acquired ownership and took possession of the Benton ranch; that there was no fence maintained across said road at the time he located on the Benton ranch, but that he built a fence across it a short time thereafter; that the fence remained across the road for a short time only, when the plaintiff "cut" an opening in it; that plaintiff never complained to him about the fence until the matter was brought before the supervisors by plaintiff. Defendant denied proposing to plaintiff that he (defendant) would build another road for him (plaintiff) to be used in the place of the road in controversy. He testified that, at the hearing before the supervisors, the plaintiff repeatedly stated that the road was a county road. He further testified that, some "ten or twelve years ago," the general public traveled over the road in going to and returning from certain copper mines then being worked some distance beyond the Costello place.

The witness Taber, testifying for defendant, stated that at some time prior to the hearing before the board of supervisors and at the house of the witness the plaintiff declared to the witness that the road was a public or county highway.

A number of other persons testified that at the hearing before the board of supervisors they heard the plaintiff declare that the road in question was a county road.

M. F. Barnum, a member of the board of supervisors of Siskiyou County, testified that the board ordered defendant to remove the fence he erected across the road, but later gave him permission to maintain the fence, with gates at the ends of the road. On cross-examination, Barnum testified, in effect, that all that the supervisors knew about the road being a county road was what the parties had said relative to the matter when the hearing referred to was had. He testified that the board made no other investigation for the purpose of determining whether the road was a county road than such inquiry as was had at said hearing, which, as the evidence shows, was of an informal character or consisted of the unsworn statements, *pro* and *con*, of the parties to this controversy.

In rebuttal, the plaintiff testified that he asked the district attorney to take such legal steps as would result in keeping the road open; that he did not testify before the board of supervisors at the hearing referred to; that he always knew that the road was a private and not a county road, and (in effect) that if any confusion in that regard occurred at the hearing it was wholly due to a misunderstanding of his position by the district attorney, who presented the matter for him before the board.

The foregoing statement of the evidence embodies a recital in substance of all the salient facts brought out at the trial.

[5] It will not be doubted that a prescriptive title to an easement may be established by or implied from the circumstances under which the use of such easement was enjoyed. (*Thomas* v. *England*, 71 Cal. 460 [12 Pac. 493]; *Humphreys* v. *Blasingame*, 104 Cal. 40, 42 [37 Pac. 804].) "The question is one for the jury, or for the court sitting as such, to determine as a fact, in the light of the relations between the parties and all the surrounding circumstances." (*Humphreys* v. *Blasingame, supra.*) That the plaintiff, by the circumstances developed by the testimony presented by him, made out at least a *prima facie* title in himself to the easement asserted and claimed by him in this action seems to us to be so clear as to leave no ground for legitimate controversy. To confirm this conclusion, it is necessary only to refer, by way of recapitulation, to the following facts and circumstances

65 Cal. App.—11

disclosed by the evidence he produced: That the road was in existence and had been continuously used for thirteen years by his immediate predecessor in interest, with the knowledge of the predecessor in interest of the defendant, when he (plaintiff) became the owner and took possession of the Marion ranch; that plaintiff, from the time he became the owner of the Marion ranch, continued to use the road, as it had been used by his predecessor, with the knowledge of Benton, the defendant's grantor or predecessor in interest, for many years before the defendant acquired the Benton property (the servient estate), and continued to use it as he always had after Sharp bought the Benton property, with the knowledge of Sharp, and without ever asking the latter's permission to use it; that plaintiff kept the road in repair; that Sharp once proposed to him that he would build another road for plaintiff, to be used by the latter for the same purposes as he was required to use the road in dispute; that plaintiff, under a claim of right to the way, cut an opening in the fence erected by the defendant across the road so as to enable him to use the road for the usual purposes to which he had for over fifteen years continuously put it. These facts and circumstances, viewed alone according to their face value, seem clearly to reveal or imply all the essential elements of a prescriptive title in the plaintiff in the defendant's land for the purpose claimed by the former. In fact, the circumstances and facts specifically adverted to, in the absence of countervailing proof of such force as to overcome their probative effect, are sufficient to justify the conclusion that plaintiff acquired a prescriptive title to a private way over defendant's land long before the defendant acquired ownership of the Benton ranch.

The case of *Humphreys* v. *Blasingame,* 104 Cal. 40, 43 [37 Pac. 804], is, as to the facts, strikingly similar to the instant case, and the following discussion of the facts in that case is peculiarly pertinent to the facts of this:

"We think the evidence sufficient to support the finding that the way was used by plaintiff for more than the statutory period under a claim of right, and that the use was not merely permissive. He had used it five years or more before defendant acquired the property, and was so using it when defendant acquired it. The use could not, therefore, have originated in defendant's permission, either

express or implied, and the fact that defendant made no objection, nor any inquiry as to plaintiff's right, is quite as significant of an admission of such right as it is of a mere permissive use, whilst the fact that plaintiff never asked permission to use the way is at least suggestive of a claim of right to use it."

Thus far the testimony presented by the plaintiff has alone been considered. As to the support which the defendant attempted to give to his several defenses, it is only necessary to repeat that it was wholly the function of the trial court to determine whether he had succeeded in breaking down the *prima facie* case made by the plaintiff. Its decision upon that question, as evidenced by its findings, is conclusive upon this court.

As to the claim of the defendant that the evidence shows that the road is a county road, it is to be said that there is no testimony in this record which shows or tends to show that the public authorities of Siskiyou County ever regarded or, until the hearing above referred to, attempted to recognize, the road as a county road. There is no testimony that the supervisors or the supervisor and *ex-officio* road superintendent of the district in which the road is located ever did any repair or other work of improvement on, or attempted to exercise any authority over, the road until the hearing before the board following the controversy between Costello and Sharp as to the legal character or status of the road, and the only supervisor testifying at the trial said that the board did not know that it was a county road. There is no evidence that a considerable number of people had ever had occasion to use the road except for a year or two some twelve years before the commencement of this action, during which the development of some copper mines had been attempted and that those engaged in such development passed back and forth over the road. There is absolutely no evidence in this record showing or tending to show that there had ever existed a franchise for the maintenance of the road as a toll road.

[6] Plaintiff's alleged declarations that the road was a county road amounted to no more than a legal conclusion. While testimony that he had made such statements was perhaps admissible as tending to impeach his testimony that he had always claimed title to a private way over the road,

the testimony of such declarations could not perform the office of substantive proof of the legal character of the road. As was said in the case of *Humphreys* v. *Blasingame, supra,* referring to the testimony of the plaintiff therein that he supposed that the difficulties of reaching his land by any other route were such as gave him a right of way of necessity across defendant's land rather than a right of prescription: "That he [plaintiff] was mistaken upon a question of law does not affect the fact that he claimed a right to cross defendant's land by a road which he found in existence when he purchased the one hundred and sixty acre tract."

In other words, the question whether the road was or was not a county road was one for decision by the court and not by the witnesses.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.