[S. F. No. 17362.   In Bank.   June 28, 1948.]

EMORY O'BANION et al., Respondents, v. A. A. BORBA et al., Appellants.

C. Ray Robinson, Samuel V. Cornell and Margaret A. Flynn for Appellants.

Linneman & Burgess and L. M. Linneman for Respondents.

CARTER, J.—Defendants appeal from a judgment declaring plaintiffs to be the owners of easements for roads and a ditch across land owned by defendants.

The trial court found that plaintiffs are the owners of a described right of way or road (hereinafter called first easement) across defendants' land designated Parcel A, and of a described right of way for a ditch, and road along it (hereafter called second easement) across defendants' land designated as Parcel B.

Plaintiffs acquired parcels of land in 1933 and 1938. Defendants acquired their Parcels A and B in 1945 from Miller and Lux, Incorporated, the deed excepting and reserving all then existing rights of way for roads, ditches and irrigation works. The first easement extends from Russell Avenue, a public road, about 2 miles from plaintiffs' property, across defendants' Parcel A. The second easement extends from an irrigation canal across defendants' Parcel B, to plaintiffs' property. The land over which the easements extend has been unfenced until defendants erected fences in 1945. It is an arid area used only for pasturage and hunting during a part of the year.

Defendants assert that to acquire a prescriptive easement there must be an open and notorious claim of right, non-permissive user and a use other than that in common with the public. Their attack is basically aimed at the sufficiency of the evidence to establish an open claim of right and adverse user. In this connection it is pertinent to observe that whether the use of the easement is adverse and under a claim of right, or permissive and with the owner's consent, and the nature of the user is sufficient to put the owner on notice, are questions of fact. (1 Cal.Jur. 635.) Also, if there is any substantial evidence to support the judgment, it must be affirmed. All conflicts must be resolved in favor of the pre-

vailing party and the evidence viewed in a light most favorable to him.

■ It appears from the evidence that the first easement was a road existing and well defined when the property was acquired by plaintiffs in 1933. The evidence shows that it had been in existence since 1924. In 1938, the second easement consisting of a ditch and a road along it was constructed. Since that time plaintiffs have openly maintained, used and kept both easements in condition for their use. While neither of the easements was bordered by a fence nor was extensive grading done on the roads, every year they have been openly scraped and repaired. There is a conflict in the evidence, but there is testimony that there were no other roads in the vicinity of the first easement. Plaintiff Henderson testified that he used both easements and used the road as the only means of access to his property. The road was used by plaintiffs for vehicles and for driving stock, hauling farm equipment and the like commonly associated with the use of such a road in connection with their land. Dye, a tenant of plaintiffs' property for three years, testified he used the second easement continuously. Henderson was asked: "Have you used them [both easements] openly and notoriously during all that time? A. We have," except when the use was interfered with by defendants in 1945. Plaintiff O'Banion was asked and answered: "Have you used them [both easements] openly, continuously, and notoriously since your purchase of the land in 1938? A. I have." There is testimony that the road was used and the right to do so was claimed, although the claim was not orally communicated to anyone and no permission to use either easement was either asked or obtained from anyone. Defendant, A. A. Borba, testified that he saw both easements on the property when he purchased his Parcels A and B.

From the foregoing circumstances an inference reasonably arises which constitutes substantial evidence that, contrary to defendants' contention, plaintiffs' use of the easements was open and notorious and under a claim of right; that the use was such that notice of a claim of right adverse to the owner of the servient tenement may be imputed to him. Certainly from those circumstances we cannot say as a matter of law that the trial court's conclusion finds no basis in the evidence.

■ There has been considerable confusion in the cases involving the acquisition of easements by prescription, con-

cerning the presence or absence of a presumption that the use is under a claim of right adverse to the owner of the servient tenement, and of which he has constructive notice, upon the showing of an open, continuous, notorious and peaceable use for the prescriptive period. Some cases hold that from that showing a presumption arises that the use is under a claim of right adverse to the owner. (*Fleming* v. *Howard,* 150 Cal. 28 [87 P. 908]; *Franz* v. *Mendonca,* 131 Cal. 205 [63 P. 361]; *Kripp* v. *Curtis,* 71 Cal. 62 [11 P. 879]; *Stevens* v. *Mostachetti,* 73 Cal.App.2d 910 [167 P.2d 809]; *Smith* v. *Skrbek,* 71 Cal.App.2d 351 [162 P.2d 674]; *Chapman* v. *Sky L'Onda Mut. Water Co.,* 69 Cal.App.2d 667 [159 P.2d 988]; *Shonafelt* v. *Busath,* 66 Cal.App.2d 5 [151 P.2d 873]; *Rose* v. *Peters,* 59 Cal.App.2d 833 [139 P.2d 983]; *Wallace* v. *Whitmore,* 47 Cal.App.2d 369 [117 P.2d 926]; *Redemeyer* v. *Carroll,* 21 Cal. App.2d 217 [68 P.2d 739]; *Lemos* v. *Farmin,* 128 Cal.App. 195 [17 P.2d 148]; *Pacific Gas & E. Co.* v. *Crockett L. & C. Co.,* 70 Cal.App. 283 [233 P. 370]; *Costello* v. *Sharp,* 65 Cal. App. 152 [223 P. 567]; *Ricioli* v. *Lynch,* 65 Cal.App. 53 [223 P. 88]; *Wells* v. *Dias,* 57 Cal.App. 670 [207 P. 913]; *Yuba Cons. Goldfields* v. *Hilton,* 16 Cal.App. 228 [116 P. 715]; *Silva* v. *Hawn,* 10 Cal.App. 544 [102 P. 952]; *Gurnsey* v. *Antelope Creek etc. W. Co.,* 6 Cal.App. 387 [92 P. 326].) It has been intimated that the presumption does not arise when the easement is over unenclosed and unimproved land. (See 28 C.J.S. 736; 4 Tiffany, Real Property (3d ed.), § 1196A.) Other cases hold that there must be specific direct evidence of an adverse claim of right, and in its absence, a presumption of permissive use is indulged. (*Clarke* v. *Clarke,* 133 Cal. 667 [66 P. 10]; *Los Angeles Brick etc. Co.* v. *City of Los Angeles,* 60 Cal.App.2d 478 [141 P.2d 46]; *Rochex & Rochex, Inc.* v. *Southern Pac. Co.,* 128 Cal.App. 474 [17 P.2d 794]; *Heenan* v. *Bevans,* 51 Cal.App. 277 [196 P. 802].) The preferable view is to treat the case the same as any other, that is, the issue is ordinarily one of fact, giving consideration to all the circumstances and the inferences that may be drawn therefrom. The use may be such that the trier of fact is justified in inferring an adverse claim and user and imputing constructive knowledge thereof to the owner. There seems to be no apparent reason for discussing the matter from the standpoint of presumptions. For the trial court the question is whether the circumstances proven do or do not justify an inference showing the required elements. In the appellate

court the issue is merely whether there is sufficient evidence to support the judgment of the trial court. This view has been implicitly followed. (See *Hutton* v. *Ormando,* 3 Cal.2d 305 [43 P.2d 1100]; *Conaway* v. *Toogood,* 172 Cal. 706 [158 P. 200]; *Abbott* v. *Pond,* 142 Cal. 393 [76 P. 60]; *Humphreys* v. *Blasingame,* 104 Cal. 40 [37 P. 804]; *Thomas* v. *England,* 71 Cal. 456 [12 P. 491]; *McMorris* v. *Pagano,* 63 Cal.App.2d 446 [146 P.2d 944]; *De la Cuesta* v. *Bazzi,* 47 Cal.App.2d 661 [118 P.2d 909]; *Bernstein* v. *Dodik,* 129 Cal.App. 454 [18 P.2d 983]; *Grimmesey* v. *Kirtlan,* 93 Cal.App. 658 [270 P. 243]; *Brandon* v. *Umpqua Lumber etc. Co.,* 26 Cal.App. 96 [146 P. 46]; *Burris* v. *Rodrigues,* 22 Cal.App. 645 [135 P. 1105]; *Alper* v. *Tormey,* 7 Cal.App. 8 [93 P. 402].) In *Conaway* v. *Toogood, supra,* the rule is succinctly stated: "The question as to whether or not the use of a right of way has been adverse and under a claim of legal right so to do, or a mere matter of neighborly accommodation, is a question of fact to be determined by the jury, or the court sitting without a jury, from all the facts and circumstances of the case." (P. 709.) While many of the cases mention presumptions, the problem actually discussed therein is the sufficiency of the evidence in the light of all the circumstances disclosed. Furthermore, we see no reason why the same rule should not apply to uncultivated and unenclosed land. It may require more circumstances to establish the right, but the test is ultimately the same.

In the instant case, as before stated, there was ample evidence from which the trial court could conclude that plaintiffs' use was continuous, uninterrupted, peaceable, adverse and under a claim of right, with notice of which defendants and their predecessors could be charged. (See *Biggs Ditch Co.* v. *Jongste,* 24 Cal.2d 298 [149 P.2d 1]; *Fleming* v. *Howard,* 150 Cal. 28 [87 P. 908]; *Franz* v. *Mendonca,* 131 Cal. 205 [63 P. 361]; *Wallace* v. *Whitmore, supra; Redemeyer* v. *Carroll, supra; Pacific Gas & E. Co.* v. *Crockett L. & C. Co., supra; Costello* v. *Sharp, supra; Riciola* v. *Lynch, supra; Wells* v. *Dias, supra; Yuba Cons. Goldfields* v. *Hilton, supra;* see 34 Cal.L.Rev. 445.)

Defendants rely upon the following cases: *Peck* v. *Howard,* 73 Cal.App.2d 308 [167 P.2d 753]; *Jones* v. *Tierney-Sinclair,* 71 Cal.App.2d 366 [162 P.2d 669]; *Smith* v. *Skrbek, supra; Lyons* v. *Schwartz,* 40 Cal.App.2d 60 [104 P.2d 383]; *Schudel* v. *Hertz,* 125 Cal.App. 564 [13 P.2d 1008]; and

*Eddy* v. *Demichelis,* 100 Cal.App. 517 [280 P. 389]. In each of those cases, a judgment based upon findings of the trial court was affirmed, as being supported by sufficient evidence. The evidence simply portrayed the circumstances under which it was claimed the easements were acquired. Likewise, in the instant case it may well be that the trial court could have come to a contrary conclusion, but it was not required to do so as a matter of law under the evidence here presented.

In connection with the claimed permissive use by plaintiffs of the easements here involved, defendants assert that the evidence shows that the use was permissive and therefore could not ripen into a prescriptive right of way, and that a use in common with the public cannot be the basis for such right.

Referring first to the latter contention the law is clear that merely because the public also uses the easement does not preclude the acquisition by an individual of a right based upon his own user. His right must be based on his individual use—rest on its own foundation rather than use as a member of the public. (See *Hare* v. *Craig,* 206 Cal. 753 [276 P. 336]; *Bernstein* v. *Dodik, supra; Costello* v. *Sharp, supra;* 17 Am.Jur., Easements, § 64; 111 A.L.R. 221; Tiffany, Real Property (3d ed.), § 1199.) Here, although there was testimony that the use of the roads by plaintiffs was the same as the use by the public, plaintiff Henderson testified: ''Q. When was the first time if at all that you ever claimed any greater right in either of these roadways than that possessed by the general public.... . A. Well, by that question you mean that did I assume that I had any more right than anybody else to go there? Q. Yes. A. I certainly figured we had a right to go there because it had been used for years, and we had a use for it and necessity for going· over it, so I figured we had a right to continue using it.'' And there is evidence that the roads and ditch were maintained and repaired by plaintiffs. The ditch was constructed by them. The first easement was the only means of access to their property and they used it for the customary agricultural purposes in connection with their property. That is sufficient from which the trial court could find that the use was not permissive and was adverse rather than a user common with the public. The question was one of fact which has been decided adversely to defendants.

On the claim that the use of the easements was permissive, defendants refer to conversations with plaintiff

O'Banion when the defendants erected the fences in 1945 to the effect that he went to defendants to see if the roads could be opened, and discussed the payment of $85 to defendants to obtain an opening, and to alleged admissions by plaintiff O'Banion in his deposition to the effect that he obtained the permission of Miller and Lux, defendants' predecessors, to use the easements.

Nothing more than a conflict in the evidence is involved. As to both instances to which reference has been made it must be remembered that there is testimony that no permission for the user was sought of anyone at any time. The user was open, notorious and adverse. It was uninterrupted until 1945. Regarding the conversations when the fences were put in, O'Banion said he told Borba he wanted to get the roads opened up which is not necessarily inconsistent with a claim of right and a non-permissive user. Naturally he would go to see Borba when the roads were obstructed. Borba replied that he would have to see his attorney. O'Banion testified in regard to the conversation: "Q. . . . On this day that you went to see Mr. Borba at his home at El Nido you said you came there to see if you could make some, or what arrangements could be made to open up those roads, is that correct? A. I came to see *why* he closed them." And later "A. There was not anything mentioned about a couple of keys apiece. I told him at that time that *I did not care to have any trouble with the neighbors and I would rather get along than to have trouble with them* and that if he would put a gate up there and put a lock on it he could keep a key and I could have one and we could each go in there jointly; and he gave me no answer of any kind. He just merely said he would have to consult his attorney." Concerning the discussion about sharing the cost of the fences, O'Banion stated: "Finally he arrived at a figure for the price of the wire, which was approximately $85, and I told him that *if he felt that that was necessary for us to get along* out there that I would be willing to pay the $85 for half the fence *if he did not obstruct the road.* Well, as soon as I came back to him about obstructing the road, all he would say was he had to consult his attorney." He did not state that he would pay part of the expense. From all that transpired the court could well conclude that there was no admission of a permissive use, but rather O'Banion was asserting his right in a peaceable manner.

O'Banion was asked if he had testified in his deposition to the effect that he got permission of Miller and Lux in

1938. He stated that he had. On the other hand we have repeated testimony by O'Banion and others that no permission was obtained from anyone. Assuming the testimony from the deposition was offered as admissions of plaintiff O'Banion and thus independent evidence rather than impeachment (which is doubtful) we have nothing more than a conflict in his testimony which has been resolved by the trier of fact against defendants. "... it is within the province of the trier of fact to resolve conflicts in evidence whether the conflict is between witnesses on one side or on opposite sides. Hence, this court will not disturb the finding where there is any substantial evidence supporting it, even though there is a conflict in the evidence produced by the prevailing party." (*Rice* v. *California Lutheran Hospital,* 27 Cal.2d 296, 301 [163 P.2d 860].)

▆ Defendants urge that they were bona fide purchasers for value and not bound by easements acquired by prescription—not of record. They admit, however, and it is borne out by the record, that they had actual knowledge of the existence of the roads and ditch at the time they purchased the land traversed thereby. At page 25 of defendants' opening brief counsel state: "Except for their *very existence* and *the fact that appellant saw them before he purchased his property,* there is not a thing in the record to charge him with any notice of any easement of right of way over the private roads, either claimed or perfected." (Emphasis added.) Furthermore, there is evidence that there were no other roads on the property (there is a conflict on the subject), the user was open and notorious, repairs had been made, and when defendants purchased their property, reservation of easements were made in the deed to them, indicating that there might be such in existence. All of these factors, coupled with defendant Borba's testimony, point to his actual or constructive knowledge of the existence of the easements in accordance with the implied finding of the trial court.

▆ Defendants raise for the first time by letter sent to this court, after they petitioned for a hearing here, the contention that the injunctive portion of the judgment debarring them from obstructing the easements in anyway whatsoever is too broad and that they should be permitted to erect gates across them. Various rules have been applied in regard to the right of the servient owner to maintain gates (and require the owner of the easement to shut them) across an easement

acquired by prescription. It has been stated by some authorities that the right is measured by the user and thus if no gates ever existed during the prescriptive period none may be maintained thereafter. Others hold that in any event the servient owner is entitled to use the easement in any way that does not interfere with the use by the dominant owner and hence he may maintain gates if they do not unreasonably interfere with the easement owner's use of his easement. Some make a distinction between where the easement is in urban areas and over agricultural land. (See cases collected and discussion, 28 C.J.S., Easements, § 98; 73 A.L.R. 778; Thompson on Real Property (Perm. ed.), § 586; Tiffany, Real Property (3d ed.), § 812; 17 Ky.L.J. 132; 5 Temp.L.Q. 297; Jones on Easements, § 400; Gale on Easements (9th ed.), p. 495.) It is conceded that during the prescriptive period here involved defendants' land was unenclosed and there are only vague references to it having been used for pasturage. It was at that time apparently unused, uncultivated land. There is no evidence of the use defendants are making or intend to make of their land, nor other circumstances showing the need for gates. Nor did defendants offer evidence to show that the maintenance of gates would not unreasonably interfere with plaintiffs' use of the easements. It is apparent from the record that so far as defendants are concerned, the case was tried upon the theory that plaintiffs had not acquired the easements claimed by them across defendants' property, and no consideration was given to the right of defendants to maintain gates or cattle guards across the easements in the event plaintiffs established their right thereto. As hereinbefore stated, this question was not raised until after defendants' petition for hearing was filed in this court. The question as to the right of defendants to maintain gates or cattle guards across said easements is therefore not before us. In their closing brief filed November 20, 1947, plaintiffs concede that defendants have the right to construct and maintain cattle guards across said easements. Such cattle guards would, of course, constitute some obstruction to the use of said easements by plaintiffs, as one of the uses claimed by plaintiffs was the driving of cattle over said roads. ▮ In view of the nature of the easements here involved, it would seem that the maintenance of gates across the roads in question, which gates could be opened and closed by plaintiffs at will, would not constitute obstructions prohibited by the judgment. This question may arise in the event defendants

should enclose their land with a fence and construct suitable gates on the roads for the use of those who have the right to traverse them.

■ It should be remembered that the easements here involved are private rights of way acquired by adverse use, and the rights thus acquired are limited to the uses which were made of the easements during the prescriptive period. (17 Am.Jur. § 98, p. 996; §§ 100-101, pp. 997-1000; § 103, p. 1001.) Therefore, no different or greater use can be made of the easements without defendants' consent.

It would seem to follow, therefore, that the judgment must be interpreted in the light of the use for which the easements were acquired by plaintiffs, and the right of defendants to make a reasonable use of their land subject to the easements thus acquired. (See 17 Am.Jur. § 122, p. 1012; 73 A.L.R. 778, 788; *Pasadena* v. *California-Michigan etc. Co.* (1941), 17 Cal.2d 576, 579 [110 P.2d 983, 133 A.L.R. 1186]; *Merry* v. *Priest* (1931), 276 Mass. 592 [177 N.E. 673, 674]; *Chesson* v. *Jordan* (1944), 224 N.C. 289 [29 S.E.2d 906, 909]; *Board of Trustees* v. *Gotten* (1919), 119 Mass. 246 [80 So. 522, 523]; *Dyer* v. *Walker* (1898), 99 Wis. 404 [75 N.W. 79]; *Flener* v. *Lawrence* (1920), 187 Ky. 384 [220 S.W. 1041, 1044].) Whether under such interpretation of the judgment defendants may construct and maintain gates across said easements, which will not interfere with plaintiffs' use thereof, is a matter for the future determination of the court if and when the question is presented.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.