[Civ. No. 1112.   Third Appellate District.—August 28, 1913.]

JULIA A. BURRIS, Respondent, v. JOE RODRIGUES, Appellant.

INJUNCTION—TRESPASS BY RUNNING WATER OVER LAND—SUFFICIENCY OF COMPLAINT.—If it appears from a complaint for an injunction that the defendant is, without right, using a portion of the plaintiff's land for the purpose of conducting water over it by means of a ditch, and threatens to continue to do so, a total destruction of the plaintiff's right to use that portion of his land is thereby threatened, and injunction is the only remedy. The complaint is not subject to general demurrer because it sets out no facts showing irreparable damage, and no statement to the effect that the acts of defendant, unless restrained, will ripen into a right or easement by lapse of time.

ID.—DEMURRER TO COMPLAINT—HARMLESS ERROR IN OVERRULING.—If error was, in this case, committed by overruling the demurrer, it was without prejudice, for the reason that the judgment is within the issues made by the cross-complaint and the answer thereto.

ID.—DITCH FOR IRRIGATION—PRESCRIPTIVE RIGHT TO MAINTAIN.—The findings in this case against a prescriptive right on the part of the defendant to run water through a ditch over the plaintiff's land for irrigation purposes, is supported by the evidence.

ID.—EASEMENT—HOW ESTABLISHED BY ADVERSE USER.—To perfect an easement by occupancy for five years, the enjoyment must be adverse, continuous, open, and under claim of legal right, and not by the consent, permission, or indulgence merely of the owner of the servient estate.

ID.—NECESSITY OF USE—EVIDENCE INADMISSIBLE.—Testimony as to whether the defendant has any other way of obtaining water except through the ditch is not admissible, when the only right claimed by him is predicated on adverse use, and the doctrine of necessity is not in issue.

ID.—EVIDENCE—CONVERSATION BETWEEN DEFENDANT AND HIS GRANTOR. A conversation between the defendant and his grantor that he had acquired a right to use the plaintiff's land, is incompetent as against the plaintiff.

APPEAL from a judgment of the Superior Court of Kings County and from an order refusing a new trial. John G. Covert, Judge.

The facts are stated in the opinion of the court.

M. L. Short, and H. Scott Jacobs, for Appellant.

J. L. C. Irwin, for Respondent.

BURNETT, J.—The action was for an injunction to restrain defendant from running water in a ditch for irrigation purposes over plaintiff's land. Defendant appealed from the judgment against him, and from the order denying his motion for a new trial.

The first point made by appellant is that the complaint does not state a cause of action for injunction, there being no facts set out showing irreparable damage and "no statement to the effect that the acts of defendant unless restrained will ripen into a right or easement by lapse of time." In support of his

contention, appellant cites *California Navigation Company* v. *Union Transportation Co.,* 122 Cal. 641 [55 Pac. 591]; *Bishop* v. *Owens,* 5 Cal. App. 83, [89 Pac. 844]; and *Willis* v. *Lauridson,* 161 Cal. 106, [118 Pac. 530].

These declare the general doctrine as claimed by appellant to be applicable to the particular facts therein involved, but we think the complaint here clearly shows a continuing trespass upon and to real property and that it is brought within the rule of *Richards* v. *Dower,* 64 Cal. 62, [28 Pac. 113]; *Schaufele* v. *Doyle,* 86 Cal. 107, [24 Pac. 834]; *McRae* v. *Blakeley,* 3 Cal. App. 171, [84 Pac. 679]; and *Mendelsohn* v. *McCabe,* 144 Cal. 233, [103 Am. St. Rep. 78, 77 Pac. 915].

In the Mendelsohn case there was a grant of a right of way subject to the right of the grantor to keep and maintain gates at each end thereof. The supreme court held that it was the duty of the grantee to close and fasten the gates after passing through them, "and where the grantee was accustomed to leave the gates open, the grantor is entitled to an injunction to restrain the use of the right of way, except on condition of closing the gates after each passage through them." In discussing the question, it is said: "The right to an injunction is not always defeated by the mere absence of substantial damage from the acts sought to be enjoined. . . . The right to an injunction, therefore, is clearly established upon two grounds; first, because it is an invasion of his rights and an injunction is necessary to prevent a total destruction thereof, and, secondly, because it is necessary to prevent a multiplicity of actions."

It appears in the complaint before us that defendant, without right, is using a portion of plaintiff's land for the purpose of conducting water over it, and that he threatens to continue to so use it. In other words, a total destruction of plaintiff's right to the use of a portion of her land is threatened and injunction is the only adequate remedy.

Of course, it is axiomatic that where a person has a right to the use and enjoyment of property he is entitled to have it protected against invasion by another and his ownership of the property carries with it the right to the full use and enjoyment of it or of disposing of the entire interest to another. That this right of plaintiff is shown to have been invaded by defendant is entirely clear from the said allegation of the

complaint. In fact, both reasons stated in the Mendelsohn case exist here and are necessarily involved in plaintiff's averments.

In some of the other cases the proposition has been stated substantially as follows: Whenever there is a threat and intent to wrongfully enter upon another's real property and to take permanent possession thereof and effect a permanent lodgment there, the threatened injury is irreparable in itself and the insolvency of the intruder or the actual damage which may ensue is immaterial. Again, it is stated "that it would be in the nature of waste, would destroy the very substance of respondent's estate and would create a perpetual nuisance; and against such acts injunction is the proper remedy. Such acts would not constitute mere fugitive and temporary trespasses, but a trespass of a continuing nature, whose constant recurrence would render a remedy at law entirely inadequate." We think the court was undoubtedly right in overruling the general demurrer. But if error was committed, it was without prejudice, for the reason that the judgment is within the issues made by the cross-complaint and the answer thereto.

At the trial defendant attempted, in accordance with the allegations of his cross-complaint, to justify his acts in conducting the water over plaintiff's land on the ground that he had acquired a prescriptive right thereto. The court, however, found: "That the defendant is now, and at all the times during the irrigating season of 1910, without any right or authority from plaintiff, has run water in and through said ditch, over and across said northwest quarter of said section 12 down to and upon the lands of defendant, and that said defendant has no right, title or interest in or to said ditch, or to run water in and through said ditch, over and across said lands of plaintiff, down to the lands of defendant." The court also, in its findings, specifically negatived the allegation in the cross-complaint as to the adverse character of the use of the water by defendant and furthermore found "that the defendant has run water during the last past eight years, in and through said ditch, over and across said lands of plaintiff, but that said defendant ran said water by the permission and the express consent of plaintiff, and not otherwise, and that the same was not run adversely to the plaintiff, or upon any claim of right on the part of defendant so to do."

These findings present the vital point of controversy in the case. It is earnestly insisted by appellant that they are not sufficiently supported by the evidence. As in many other cases, the observation is suggested here that appellant's showing in favor of his contention seems quite strong and persuasive, but we see no escape from the conclusion that a substantial conflict exists and, therefore, said findings cannot be disturbed. To show the futility of appellant's attack upon them, it is only necessary to call attention to the following facts and circumstances: It appears from the testimony of appellant himself that he first used the ditch in the spring of 1903. At that time, one Robert Greenhalgh was the lessee of plaintiff for the quarter section of land involved herein, and Greenhalgh testified: "We continued in possession of the place from 1901 until October, 1905. The first the defendant ran water across there was in 1903," and, in reply to the question: "State the facts and circumstances surrounding the proposition of his running water across the northwest quarter of section 12 onto the land of defendant, on the southeast quarter of section 12," the witness replied: "I had this conversation with him in the summer of 1903, I can't tell the exact month. It was here in town and no one was present but myself and him. The conversation didn't last more than two or three minutes. He proposed buying that Sweet place, and he wouldn't buy it if I didn't let him run the water through there, and if I allowed him to run the water he would buy the place. I told him I had no objection to his running the water through there. When I said running the water, I mean through section 1, and through the northwest quarter of section 12. It is all under one fence. I had another conversation with the defendant about him running water across section 1 and the northwest quarter of section 12, down to the southeast quarter of section 12, but I can't tell you any date about it. I think the only other person present was my wife, Mrs. Greenhalgh. The conversation occurred, I think, on the southeast quarter, better known as the Sweet place, the land owned by the defendant. I couldn't be sure about the date, but I think it would be in 1904. Mr. Rodrigues said he would give me four tons of hay. Then I said I thought it was too little, to give me six, and, of course, he agreed to it. I got the six tons of hay one year. Mr. Rodrigues said he would

give me four tons of hay for the privilege of taking this water through there, through section 1 and the northwest quarter of section 12, and I said I thought four tons was too little and to make it six.''

The witness was corroborated by his wife who related the conversation as follows: ''Mr. Rodrigues asked Mr. Green-halgh if Mr. Greenhalgh would let him run his water through the ditch.   Mr. Greenhalgh said, 'My arrangements with Mr. Burris is that no one was to run water through there—that is what our lease states,' so he says, 'Now, I will give you four tons of hay.'   Mr. Greenhalgh says. 'No, I want six tons of hay.'   So Mr. Rodrigues hesitated a minute or so, and then he says, 'Well, that is all right.   That is for all time, each year.'   That is exactly word for word that passed.'' The witness further testified that she knew that for the two years prior to 1903 no one run any water ''through the Burris Ranch down to the Joe Rodrigues quarter'' and that prior to the time in 1903 when defendant bought that quarter it never had been farmed.   ''That was just a wild open country.'' Furthermore, she testified: ''I was present at my house in Hanford when Joe Rogers (the defendant) brought a letter from Mrs. Burris and my husband read it to him about a year ago.   I remember the conversation that was had between Joe Rogers and my husband at that time with regard to that matter.   Mrs. Burris wrote and told him that he must not run any water through that place, but if he did, she would commence suit against him.   My husband read the letter to Mr. Rogers.   Mr. Rogers asked him to write Mrs. Burris if she would let him run water through her place.   'If she don't I will drop the lease.   I can get water from Cross Creek by pumping it.'   When we lived on the Burris place Mr. Rodri-gues used to come and ask Mr. Greenhalgh if he would let him have some water.''

J. S. Burris, a son of plaintiff, testified that his father built the ditch in question in 1890 or 1891 or possibly as late as 1892 for the purpose of using water on his own land and that nobody but his father run any water in the ditch until defend-ant bought his place, and that prior thereto this southeast quarter of section 12 ''was just a wild piece of land in there covered with wild grass.''

Without quoting from other testimony, it may be seen that from the foregoing the court might well draw the conclusion that neither defendant nor any of his predecessors in interest used said ditch prior to 1903 and that defendant's use of it subsequent to that time was by virtue of license and consent and not under claim of right, and it seems idle to comment upon the proposition that it entirely justifies the inferences contained in said findings.

In *Thomas* v. *England*, 71 Cal. 460, [12 Pac. 493], it was said: ''To perfect an easement by occupancy for five years, the enjoyment must be adverse, continuous, open, peaceable. It must be adverse, and under claim of legal right so to do, and not by the consent, permission, or indulgence merely of the owner of the alleged servient estate. This is quite obvious in cases where the consent, permission or license is expressly given. But it is no less true where the permission or license is implied, as it may well be from facts and circumstances under which the use was enjoyed. The question is one for the jury, or for the court sitting as such, to determine as a fact in the light of the relations between the parties and all the surrounding circumstances.''

We deem it unnecessary to consider the bearing upon the question of the fact that defendant, in 1906, leased the said northwest quarter from plaintiff or the contention of respondent that, ''conceding for the sake of argument that defendant's use of the ditch was adverse from the time that he first ran water in 1903, to the time he leased plaintiff's land in 1906, no adverse user would attach for the reason that it was only run three years, and that no adverse user could attach since 1906, for the reason that since that time the relation of landlord and tenant has existed between plaintiff and defendant.''

Complaint is made of the finding of the court: ''That the defendant is now, and ever since on or about the 15th day of August, 1907, has been the owner in fee of, and in the possession of the southeast quarter of section 12,'' etc.

It was alleged in the cross-complaint, and not denied in the answer thereto, that defendant ''is now and for more than seven years last past has been, the owner in fee of and entitled to the possession of and in the possession of said quarter section.'' Seven years prior to the filing of said cross-complaint

would carry the date back to January, 1904. Defendant, however, seems not to have been satisfied with the admission as to this date but introduced in evidence the deed to defendant of the tract of the date of August 15, 1907. It seems, however, that defendant before that time had entered into possession under a contract of sale for five hundred dollars, calling for the payment, as defendant testified, of "$100.00 down and then $100.00 every year until I get the $500.00 all paid and then he agreed to give me the deed."

As far as the legal title is concerned, then, the finding is in accordance with the evidence. But conceding that the finding should have followed the said allegation of the cross-complaint, it is entirely immaterial in view of the fact that the court found on sufficient evidence that the defendant's use of the water-ditch was permissive and not under claim of right. It could make no difference, of course, how many years he had been the owner of the alleged dominant tenement if he had acquired no easement over the servient estate.

We discover no error committed by the court during the trial of the cause.

As we have seen, the only right claimed by appellant was predicated of adverse use and clearly no light could be turned upon the claim by an answer to the question: "Is there any other way that Rodrigues can get water down upon his quarter section except through this ditch?" If the doctrine of necessity could apply to such a case, it was not at issue and the court was clearly right in sustaining an objection to the question.

The court sustained an objection to this question asked of witness Wilkinson: "There was alfalfa growing on that quarter west of the Rodrigues quarter, wasn't there?" Appellant says: "This ruling was error for the reason that it was proper for appellant to show that crops were growing on the Rodrigues quarter to show that the water was being put to a beneficial use." Appellant, though, overlooks the fact that the question was addressed not to Rodrigues's quarter but to the quarter west of it, and the ruling was clearly correct.

While defendant was on the stand the following occurred: "Q. You had a conversation with the man you bought the land from before you bought it about the ditch, didn't you?

A. Yes, sir. Mr. Jacobs: Q. Who was it you had the conversation with? Mr. Irwin: We object to that on the ground it is incompetent, irrelevant and immaterial. The Court: Well, this is preliminary but probably it is hardly worth while to lay the foundation for anything that is so incompetent. I will sustain it. No use of wasting time." Appellant contends that "This conversation was material and competent under section 1850 of the Code of Civil Procedure as the declaration of the owner of the land regarding the ditch, which is the fact in dispute in this case, was competent and material evidence to show the right to the use of said ditch in connection with the land of defendant."

If the conversation had been with the owner of the servient tenement, of course, the situation would be different. But appellant was undertaking to introduce a conversation with his grantor as evidence that he had acquired a right to use plaintiff's land. It was manifestly no part of the *res gestae* and so clearly hearsay and incompetent that the court was justified in saying that there was "no use of wasting time."

Applying well established principles to the record before us, we find no reason for disturbing the conclusions of the trial court and the judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.