[Civ. No. 10938. First Appellate District, Division Two.—January 5, 1939.]

UNION OIL COMPANY OF CALIFORNIA (a Corporation) et al., Respondents, v. HENRY C. DOMENGEAUX et al., Appellants.

THE TEXAS OIL COMPANY (a Corporation) et al., Respondents, v. HENRY C. DOMENGEAUX et al., Appellants.

Willett & Willett and Horace W. Danforth for Appellants.

Andrews, Blanche & Kline, Mortimer A. Kline, Paul M. Gregg and Douglas C. Gregg for Respondents.

SPENCE, J.—The above-entitled actions were consolidated for trial and were tried by the court sitting without a jury. Findings were expressly waived and the trial court entered its judgment enjoining defendants from maintaining or operating a certain oil and gas well below a depth of 432 feet and ordering defendants to plug up and abandon all of said well below said depth in the manner provided by law. Plaintiffs were awarded costs against defendants in the sum

of $102.55. Defendants appeal from the judgment and from the order denying defendants' motion to retax costs.

The defendants' contentions are expressed in various ways but it is apparent that the main contention is that the evidence was insufficient to sustain the judgment. We find no conflict in the evidence on any material point and a brief summary of the situation presented by the record should suffice.

The controversy arose because of defendants' slant-drilling of a well in the Signal Hill oil field. The defendants, other than the trustee in bankruptcy, were tenants in common of a parcel of land 65 feet by 135 feet in size. Plaintiffs Union Oil Company, A. S. Johnston Drilling Corporation, Texas Oil Company and Bolsa Chica Oil Corporation, respectively held separate oil and gas leases on various parcels of land in the vicinity. Plaintiffs Dabney-Johnston Oil Corporation and D. D. Dunlap Oil Company dismissed before trial and are not involved here. The other plaintiffs above mentioned were in possession of their respective leaseholds and were operating the same for the purpose of producing oil and gas therefrom under leases which conferred upon them the exclusive right to do so.

Defendants Henry C. Domengeaux and Owen Jackson formed a partnership and commenced drilling the well in question on defendants' parcel. The surface location of said well was just south of the south boundary line of the leasehold of plaintiff A. S. Johnston Drilling Corporation. Shortly before the drilling operations commenced, plaintiffs Texas Company and Union Oil Company had each served a written notice warning defendants that they must not cause or permit said well to cross or be within the boundary lines of the respective leaseholds of said plaintiffs.

The drilling of the well was started on December 9, 1934, and was completed by January 29, 1935. It was brought into production and continued on production until closed down by temporary injunction in August, 1935. The evidence shows and defendants concede that at all times, defendants "had full knowledge of the course their well was taking". Said course was shown by defendants' own records as well as by the subsurface survey made by order of court after the filing of the complaint in the Union Oil Company case.

The well was drilled to a total depth of 4,110 feet. It was surveyed as the drilling progressed to a point 30 feet from the bottom. The surveys showed that the well deviated at a wide angle to the north and west and that the surveyed bottom thereof was slightly in excess of a quarter of a mile from a perpendicular line drawn through its surface location. Only 432 feet of the well was below the surface holdings of defendants. From there the well was drilled under the surface holdings of all the plaintiffs and the surveyed bottom thereof was located under the surface holdings of the General Petroleum Company at a point within 90/100ths of a foot of being under the surface holdings of plaintiff Union Oil Company. The bottom of the perforations were down to that point. The testimony showed that under such conditions, the well drew oil from all the property surrounding the perforations including the property of the plaintiff Union Oil Company. The expert stated, however, that there could only be "a very remote guess" as to what proportion of the oil came from the Union Oil Company property.

The Union Oil Company action was filed on August 7, 1935. Henry C. Domengeaux and Owen Jackson were defendants in that action and after they were adjudicated bankrupt in November, 1935, the trustee in bankruptcy was brought in as a party to the action. The Texas Oil Company action was not filed until March 13, 1936, and the trustee in bankruptcy was likewise made a party to that action. Upon the trial, plaintiffs abandoned any claim for an accounting or for damages and sought only the injunctive relief which was granted.

We find no merit in defendants' contention that the evidence was insufficient to sustain the judgment. Defendants have submitted voluminous briefs, but a reading of the arguments of defendants on their main contention leads us to the conclusion that said arguments find no support in authority or reason. They concede that the course of their well was as described above and further concede that at all times, they had knowledge of the course the well was taking. They nevertheless argue that they drilled their well by "ordinary and usual methods", using no "deviational tools" and that therefore their acts were not unlawful but were wholly within their rights. They go so far as to claim that the well was not a "crooked well" and that there was no evidence of

"slant-drilling". Their position was expressed by counsel for defendants in the trial court as follows: "I don't agree with counsel at all that this is the crookedest well in Signal Hill, or a crooked well. The well is straight. Its direction happens to be sideways, or partially so, instead of straight down." We are unable to grasp the significance of the distinction for the purposes of this case and we cannot follow the above-mentioned arguments of counsel. Perhaps the key to the situation is found in the reply brief, where counsel argues that "there should be recognized some modification of the strict common-law doctrines of trespass". We find nothing, however, in the facts and circumstances before us which would justify any modification of the settled rules. Defendants continued to drill their well, knowing the course it was taking, and their acts must be treated as intentional and wilful. But, as pointed out in our recent decision in *Union Oil Co.* v. *Mutual Oil Co.*, 19 Cal. App. (2d) 409, at page 413 [65 Pac. (2d) 896], "The question of whether the well was intentionally or unintentionally drilled so as to slant into plaintiffs' premises, is immaterial here. In either case a trespass was committed in the drilling of the well . . . " We therefore conclude that defendants were chargeable with trespassing in so drilling into and through the lands of others after passing a depth of 432 feet.

Defendants raise another point with respect to the sufficiency of the evidence, which point requires further consideration. They contend that even assuming that they were chargeable with trespassing, the damages were "too trifling and inconsequential" to justify the granting of injunctive relief. It appears to be defendants' theory that an injunction will issue only upon a showing of irreparable injury. In this connection, defendants entirely ignore the testimony showing that their well, after trespassing upon the property of the several plaintiffs, was bottomed at a point where it was producing oil from the property of plaintiff Union Oil Company. But even in the absence of such showing, we are still of the opinion that there is no merit in said contention. The trespass here was a subsurface trespass in an oil and gas producing area. It was conceded by plaintiffs on the trial that they could make no such showing as to actual damage as would justify an award of damages in any specific amount. The difficulty in making such a showing is recognized and dis-

cussed in the recent decision in *Hartman Ranch Co.* v. *Associated Oil Co.*, 10 Cal. (2d) 232, at page 254 [73 Pac. (2d) 1163]. Such concession, however, does not justify the conclusion that plaintiffs had suffered no injury. It has heretofore been held in a case involving a subsurface trespass by way of tunneling that "the injury is irreparable in itself". (*Richards* v. *Dower*, 64 Cal. 62 [28 Pac. 113].) Furthermore, we believe that the evidence before us brings the cause within subdivision 2 of section 3422 of the Civil Code providing for the issuance of an injunction "where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief". It appears from the authorities cited by the parties that each case must stand upon its own facts in determining whether equitable relief should be granted and defendants have not called to our attention any authority in this jurisdiction holding that such relief should be denied under the circumstances before us. In some cases, notably those involving inconsequential surface encroachments, injunctive relief has been denied ordinarily upon the application of the maxim *de minimus* but in such cases it is obvious that there was no appreciable damage or at least that the extent of such damage was easily ascertainable. But here we are dealing with a subsurface trespass in an area where it is extremely difficult to ascertain the extent to which plaintiffs have been and will in the future be damaged by defendants drilling and maintaining an oil producing well through their oil producing properties. Under such circumstances, we believe that the circumstances warrant the interposition of a court of equity and particularly where the trespass is of a continuing nature and might ripen into a prescriptive right. (*Vestal* v. *Young*, 147 Cal. 715 [82 Pac. 381]; *Harmon* v. *De Turk*, 176 Cal. 758 [169 Pac. 680]; *Burris* v. *Rodrigues*, 22 Cal. App. 645 [135 Pac. 1105]; *Felsenthal* v. *Warring*, 40 Cal. App. 119 [180 Pac. 67].) Before leaving the point under discussion, we should state that we do not wish to be understood as holding that every subsurface trespass in the drilling of an oil well would warrant injunctive relief. We can conceive of an oil well deviating slightly from the perpendicular, trespassing to a small extent upon the land of an adjoining owner and returning to oil-producing strata within the property of the owner of the well. In such case, the damage, if any, to the adjoining owner might be

272

said to be wholly inconsequential and equitable relief might properly be withheld, particularly where the owner of the well is solvent. But under the circumstances before us, and giving consideration to the fact that the persons who had actually drilled the well were insolvent, there is no doubt that the trial court properly granted the injunction. (See 14 Cal. Jur. 235.)

Defendants further contend that "even assuming that any injunction could issue in the cases here involved, still the trial court's action was erroneous, in that it did not provide for the recovery of well costs and other statutory items". This contention is wholly without merit. In support thereof, defendants cite the paragraph of section 349¾ of the Code of Civil Procedure which is entitled "Measure of damages." Assuming the constitutionality of said section 349¾, it is apparent that the cited portion of said section is not applicable here. It deals solely with the measure of damages to be awarded to a plaintiff who seeks the recovery of damages. Plaintiffs here relinquished all claim to a recovery of damages and they were entitled to an injunction without any provision for the payment of the cost of the drilling of the trespassing well, which well was a detriment rather than a benefit to plaintiffs.

Defendants next contend that the action of the Texas Company and Bolsa Chica Oil Corporation, filed March 13, 1936, is barred by section 349¾ of the Code of Civil Procedure. We will again assume the constitutionality of said section, but we nevertheless believe that said contention cannot be sustained. Said section requires certain actions to be brought "within one hundred eighty days" and provides that "The time for commencement of existing causes of action which would be barred by this section within the first one hundred eighty days after this section becomes effective, shall be the said first one hundred eighty days." The section became effective on September 15, 1935, and defendants claim that the action was filed one day too late. It is conceded that the general rule for the computation of time provides for the exclusion of the first day and the inclusion of the last. (*Shea* v. *City of San Bernardino*, 7 Cal. (2d) 688 [62 Pac. (2d) 365]; *Ley* v. *Dominguez*, 212 Cal. 587 [299 Pac. 713]; *Scoville* v. *Anderson*, 131 Cal. 590 [63 Pac. 1013]; sec. 12, Code Civ. Proc.) If said general rule applies, the action was

filed in time. But it is argued that the general rule does not apply here because of the wording of the statute. In other words, it is claimed that the language of the statute indicates that an exception to the general rule was intended. We do not so read it. As was said in *Ley* v. *Dominguez, supra*, at page 594, ''The gravest considerations of public order and security require that the method of computing time be definite and certain. Before a given case will be deemed to come under an exception to the general rule the intention must be clearly expressed that a different method of computation was provided for.'' There is no clear expression in the section of an intention to provide for a different method of computation of time and in our opinion the action was brought within the time provided.

■ It is further contended that ''the defendant trustee in bankruptcy was not a proper party to this action for the purposes assigned, and could not be made such, even upon purported consent of the federal court''. This contention appears to be likewise without merit. In discussing this contention it is unnecessary to consider whether section 66 of the Judicial Code (28 U. S. C. A. 125) is applicable. Assuming that the bankruptcy court, in the exercise of its discretion, might have issued an injunction (*Ex parte Baldwin*, 291 U. S. 610 [54 Sup. Ct. 551, 78 L. Ed. 1020]), it appears that it refused to do so. Defendants assert ''that the bankruptcy court in the instant case abused its discretion, and exceeded its powers and authority when it failed to protect its trustee against the jurisdiction of the state court, and permitted him, improperly to be made a party defendant in these consolidated cases . . . ''. There is nothing to show that said court abused its discretion or exceeded its authority but in any event, we do not believe the point is properly presented to this court.

■ The further contention is made that ''there is in this case both misjoinder of plaintiffs and of causes of action, and defective joinder of parties''. A complete answer to the first portion of this contention is found in the 1927 amendment of section 378 of the Code of Civil Procedure. The previous rules set forth in the authorities cited by defendants were thereby liberalized so as to permit the joinder of plaintiffs and the joinder of causes of action under such circumstances as are presented here. But even if it be assumed

that there was a misjoinder of plaintiffs and misjoinder of causes of action, we find no prejudice to defendants warranting a reversal. If each plaintiff had brought a separate action, said actions could properly have been consolidated for trial. The two actions here were consolidated for trial and defendants do not complain of the order for consolidation. If any prejudice could have resulted to defendants from such consolidation, they should have objected thereto in the trial court and urged their objection on appeal in the event of an adverse ruling by the trial court. No such objection was made in the trial court or on appeal and we cannot escape the conclusion that any alleged misjoinder of plaintiffs or of causes of action was without prejudice to defendants.

The second portion of the last-mentioned contention relates to the failure to join plaintiffs' lessors and also to the failure to join certain persons who were owners as tenants in common of a seventeen per cent interest in the parcel of land upon which defendants commenced the drilling of the well. Said parties would have been proper parties but they were not necessary parties to the actions, but in any event, there is no showing that the failure to join said parties resulted in any prejudice to defendants.

The final contention of defendants is that the trial court erred in denying the motion to retax costs. In this connection, defendants call attention to the fact that the trustee in bankruptcy did not become a party until after the accrual of certain costs in the Union Oil Company action and to the further fact that certain defendants did not participate in the actual drilling of the well. We find no error in the trial court's ruling. The action was one where costs could be allowed in the discretion of the trial court under subdivision (c) of section 1032 of the Code of Civil Procedure. All of the defendants, including the trustee in bankruptcy resisted plaintiffs' claims for any relief whatever. We find no abuse of discretion on the part of the trial court in awarding costs in the sum of $102.55 against all of said defendants.

The judgment and the order denying defendants' motion to retax costs are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.