[Civ. No. 36894. Second Dist., Div. One. May 19, 1971.]

WEST COAST CONSTRUCTION COMPANY, INC.,
Plaintiff and Respondent, v.
OCEANO SANITARY DISTRICT, Defendant and Apppellant.

## COUNSEL

Shipsey & Seitz and Gerald W. Shipsey for Defendant and Appellant.

Crossman, Weaver & Geihs and Gerald C. Weaver for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—In February of 1969 plaintiff instituted an action against defendant (hereinafter referred to as "District") and others in which damages —for breach of contract involving the construction of a sewer system and by reason of certain tortious acts—were demanded; in connection therewith, an injunction was also sought to prevent the District from expending or disbursing any monies for the construction of such sewer system except as should be necessary to maintain it in its then condition. After a hearing on February 21, at which proof was presented, a preliminary injunction was granted. Almost 11 months later, on plaintiff's application, the injunction was broadened in scope; specifically, the District was enjoined during the pendency of the action from expending monies from a specified sewer construction fund either for payments to any contractor other than plaintiff, attorney's fees and other costs of litigation, or the employment of experts and expert witnesses. The District appeals from the order granting the foregoing restraints.

On July 7, 1967, a written contract was entered into between plaintiff

and the District to construct the sewer system in question. As construction progressed, plaintiff received monthly progress payments of which 10 percent was retained by the District as security for plaintiff's fulfillment of the contract. As of November 2, 1967, the District was delinquent to the extent of approximately $139,000 in progress payments; plaintiff then stopped construction and filed a claim (Gov. Code, § 910) for $244,-540.63, representing the above delinquency and other items (including damages for breach of contract). In an effort to find some way of completing the project and settling plaintiff's claim, extensive negotiations were carried on between the parties and the Farmers Home Administration (United States Department of Agriculture), referred to as "FHA" which originally had purchased $400,000 of the District's general obligations bonds and $150,000 of its revenue bonds to finance the project. At the District's request, on February 5, 1968, plaintiff submitted a lump sum bid of $213,000 to complete the project conditioned on the raising by the District of sufficient funds to pay other items set forth in plaintiff's claim with security therefor, including the retention monies held by the District. On March 19, 1968, the District represented to plaintiff that FHA would purchase an additional $50,000 of its revenue bonds, also, that the District would receive a grant from FHA in the sum of $150,000. It was further represented that these funds, along with the balance of construction funds on hand (assertedly $220,000), would enable the District to meet plaintiff's demands and allow it to deposit in escrow the sum of $42,949.65 to secure payment of one item set forth in plaintiff's claim. On March 25, 1968, according to the declaration of plaintiff's counsel (Mr. Weaver), the District further represented through its administrative officer (Mr. Butch) that after receipt of the bond and grant proceeds, the total funds available for payment of construction costs, as well as the deposit in escrow of the sum above mentioned, amounted to $416,949.65; in addition, according to the declaration, Mr. Butch stated that the District would have $13,300 available for engineering fees, bond costs, attorney's fees and other incidentals connected with the completion of the project.

On March 28, 1968, allegedly on the basis of the above representations plaintiff entered into an agreement with the District entitled "Agreement of Release, Compromise and Settlement," the breach of which is pleaded in plaintiff's first cause of action. In its second cause of action, injunctive relief is asked upon the ground of the District's alleged insolvency and its actions in employing other contractors, both resulting in plaintiff's inability to recover the monies due it under the agreement in question. The instant action was commenced on February 10, 1969, some four days after plaintiff again discontinued work on the project which it had previously resumed upon execution of the settlement agreement; a temporary

restraining order was obtained on the basis of the matters set forth in plaintiff's second cause of action. After an order to show cause hearing on February 21, 1969, a preliminary injunction (the form of which was prepared by counsel for the District) was issued by the court (Judge O'Reilly) on February 24, 1969; thereunder it was ordered that the District not spend any construction or FHA funds for the engagement of contractors other than plaintiff, the latter also being ordered to return to the job of construction within 15 days. On April 8, 1969, the court refused to dissolve the injunction after a complaint by the District that plaintiff was in contempt. Thereafter, on August 21, 1969, the District filed its answer, accompanied by a counterclaim, its demurrer to the complaint having been previously overruled.

On December 2, 1969, the plaintiff's counsel was mailed a copy of a letter written by counsel for the District (Mr. Shipsey) to Judge O'Reilly wherein he stated that "the restraining order in effect does not restrict a payment of funds for litigation expense" although "it does prevent use of those funds for employment of any contractor other than West Coast Construction Co., Inc. . . ." Thereafter plaintiff sought to broaden the provisions of the existing injunction. To that end a temporary restraining order was obtained on December 8, returnable December 24 based on the declaration of its counsel (Mr. Weaver) that the District intended to divert approximately $20,000 from the FHA sewer grant fund to furnish the District with an engineering report in connection with the instant litigation, that the District was already indebted to plantiff in the sum of $103,146, exclusve of its claim for damages, and that the balance of such FHA fund was only $55,512.

After four appearances and four continuances of the hearing on the return of the temporary restraining order, the matter was heard on January 15, 1970, resulting in a preliminary injunction the scope of which was broadened to enjoin the diversion of funds for any litigation expenses whatsoever. It is this order which is here challenged.

█ Although the District's counsel (Mr. Shipsey) was present in court on all four occasions when the matter was continued, even though on the fourth occasion (January 5) plaintiff's counsel was not present, on the following day (January 6), Mr. Shipsey filed a counterdeclaration in opposition to the injunction sought, and the District participated in the hearing held on January 15, it is now for the first time contended that the issuance of the injunction was in excess of the court's jurisdiction because the order to show cause, dated December 8, was made returnable on December 24, 16 days later and, therefore, more than the 15 days prescribed in section 527, Code of Civil Procedure. Plaintiff recognizes that

decisions, including *Agricultural Prorate Com.* v. *Superior Court,* 30 Cal. App.2d 154, 155 [85 P.2d 898], support the above claim; significantly, however, in *Agricultural Prorate Com.* the continuance was over defendants' objection and without their consent. But in the case at bench the District did not object; indeed it voluntarily participated in a full scale hearing on January 15 when oral and documentary evidence was introduced. Having so acted, plaintiff properly argues, the doctrine of estoppel is applicable to the District if not demanded: **(2)** "There seems to be substantial authority for the proposition that a party who has invoked or consented to the exercise of jurisdiction beyond the court's authority may be precluded from challenging it afterwards, even on a direct attack by appeal." (1 Witkin, Cal. Procedure (1954) § 149, p. 412.) █ Too, as pointed out in *Remillard Brick Co.* v. *Dandini,* 47 Cal.App.2d 63, 66 [117 P.2d 432], the requirements of the statute (§ 527) are primarily for the benefit of the defendant and may be waived by him. In general accord is *Munns* v. *Stenman,* 152 Cal.App.2d 543, 558 [314 P.2d 67]: " 'The circumstances of a particular case may be such as to estop a person from setting up the invalidity of a judgment.' [Citation.]"

█ There is still another reason why the instant claim cannot be sustained. Basically, the injunction issued after the January 15 hearing simply modifies, by extending its scope, the restraints imposed by the earlier injunction issued several months earlier (February 24) the form of which was drafted by the District's counsel. █ Citing *Union Interchange, Inc.* v. *Savage,* 52 Cal.2d 601 [342 P.2d 249], with respect to the power of the court to modify a preliminary injunction, the court in *Brunzell Constr. Co.* v. *Harrah's Club,* 253 Cal.App.2d 764 [62 Cal.Rptr. 505], states at page 772: "Where there has been a change in the controlling facts upon which an injunction was granted, or the law has been changed, modified or extended, or where the ends of justice would be served by modifying or vacating a previous order granting or denying injunctive relief the court has *inherent* power to vacate or modify its previous order when the circumstances and situation of the parties have so changed as to render such action just and equitable. [Citations.] This principle applies to preliminary as well as permanent injunctions. [Citation.]" (Italics added.) Emphasis has been given to the word "inherent" because in *Union Interchange,* after reference to earlier decisions, the court stated: "These cases support the view that the power to modify or revoke a preliminary injunction is an inherent power not dependent upon statute. . . ." (*Supra,* p. 605.) █ Further, there is this comment on the problem by Witkin: "The power to modify a prohibitory injunction, whether preliminary or permanent, does not depend on a reservation of jurisdiction, nor on the absence of notice (since no preliminary injunction can be granted without

notice, text, § 29).'" (Witkin, Cal. Procedure, 1965 Supp. § 40, p. 347.)
When the foregoing principles or comments are applied to the circumstances of this case, they would appear to compel the conclusion that the time limit prescribed by section 527, Code of Civil Procedure, did not circumscribe the trial court's power, after a hearing participated in by both sides, to broaden (or modify) the provisions of an injunction already in full force and effect.

The District next contends that since plaintiff seeks damages for breach of the so-called "settlement agreement," the court was forbidden to grant injunctive relief in view of section 526, subdivision 5, Code of Civil Procedure, which provides (with certain exceptions not here applicable) that an injunction "can not be granted: . . . To prevent the breach of a contract." It contends, as was unavailingly done in *Wind* v. *Herbert,* 186 Cal.App.2d 276, 284-285 [8 Cal.Rptr. 817], that there was no showing that a preliminary injunction was necessary to prevent "irreparable injury" and that conceivable future injury could be compensated by money damages; too, that it cannot be validly claimed by plaintiff that the District could not respond in damages, if ultimately awarded. Section 526, it should be noted, also provides when an injunction *can* be granted, specifically, when it appears by complaint or affidavit that the commission of some act during the continuance of the action would produce great or irreparable injury to a party to the action (subd. 2) or when it appears that a party to the action is doing, or threatening to do, some act in violation of the rights of another respecting the subject of the action and tending to render the judgment ineffectual (subd. 3). It was declared in an early case that mere monetary loss is not irreparable in contemplation of the remedy of injunction unless there is an averment or a showing that parties causing the loss are insolvent or in any manner unable to respond in damages. (*Duvall* v. *White,* 46 Cal.App. 305, 308 [189 P. 324].) Subsequent decisions adhere to the foregoing rule that the asserted insolvency of the defendant is a proper matter for the court's consideration. (*Union Oil Co.* v. *Domengeaux,* 30 Cal.App.2d 266, 271-272 [86 P.2d 127].) In *Lenard* v. *Edmonds,* 151 Cal.App.2d 764 [312 P.2d 308], the court stated (per Peters, P. J.): "Obviously, it was reasonably necessary and fair to both sides to maintain the *status quo* pending the outcome of the litigation. Otherwise, appellant could have deliberately stripped himself of all assets and made it impossible for him to pay any judgment that might be secured." (P. 769.)

The declaration of plaintiff's counsel (Mr. Weaver), filed December 8, 1969, in support of the additional restraints therein sought, stated that the District was then indebted to plaintiff in the sum of $103,146.52, and that the maximum amount the District had available to it, including the

proceeds from all sources, is $55,512.73; that said "defendant is insolvent, has no financial ability to pay its obligations as they mature, is without financial or legal ability to incur additional bonded indebtedness or to obtain from any source sufficient funds with which to pay any judgment in favor of plaintiff rendered herein." There then follows the further declaration that, unless restrained, the District threatens to, and will, enter into a contract with, and pay out to, a certain firm (therein named) the sum of $20,000, such sum to be taken from the fund (including FHA monies) set forth above. By counterdeclaration of its counsel (Mr. Shipsey), filed January 6, 1970, the District stated that it had "approximately $55,000.00 on deposit with the San Luis Obispo County Treasurer, and approximately $44,000.00 on deposit with Mid-State Bank, but whether or not any of that money should be paid either to West Coast Construction Co. or . . . is very much in dispute." The same counterdeclaration also states that FHA has approved expenditures of $18,000 for certain named litigation costs (including attorney's and expert witness fees) "from the above listed funds" as "there are not other funds available to the Oceano Sanitary District to resist the lawsuit above referred to."

From the above it is clear that there is no express denial by the District of plaintiff's specific statement that it is in fact insolvent. It must further be noted that of the funds available to the District, approximately $44,000 are on deposit with Mid-State Bank and presumably represent the escrow funds so deposited for plaintiff's future use pursuant to the agreement in question; even if this were not the case, all of the funds on hand admittedly fell short of a sufficiency to meet plaintiff's demands, not including those claimed by way of damages as alleged in the complaint. This conclusion is compelled despite the statement in the counterdeclaration that FHA "has approved the expenditure of $18,000.00" for the various items therein set forth; in this latter regard, not without merit is the trial court's comment to the District's counsel: "THE COURT: Now, whether or not FHA had the right or the power to negate these existing agreements and make these funds available, I don't know. I would think not. If there's a legal instrument extant, under the terms of which consideration passed, or existed, then, I don't think FHA can touch those funds by giving you permission to spend them."

On appeal it is claimed for the first time that the District has additional revenue available by tax levies; we cannot consider such claim which, furthermore, is not in harmony with the declaration by its counsel, at a time more relevant, that "there are not other funds available to the Oceano Sanitary District to resist the lawsuit above referred to."

If there was any conflict as to the matter of the District's insolvency,

all of the circumstances certainly favor the position advanced by plaintiff. We are thus confronted with a problem which has been presented to appellate courts on numerous past occasions; it has been resolved, likewise on numerous occasions, by the rule stated in *Continental Baking Co.* v. *Katz,* 68 Cal.2d 512, 527-528 [67 Cal.Rptr. 761, 439 P.2d 889]:[1] " 'The authorities are numerous and uniform to the effect that the granting or denial of a preliminary injunction on a verified complaint, together with oral testimony or affidavits, even though the evidence with respect to the absolute right therefor may be conflicting, rests in the sound discretion of the trial court, and that the order may not be interfered with on appeal, except for an abuse of discretion.' [Citation.] . . . 'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him.' [Citations.] . . . Thus, the court examines all of the material before it in order to consider 'whether a greater injury will result to the defendant from granting the injunction than to the plaintiff from refusing it; . . .' [Citations.] In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case and, it has been said, will deny a preliminary injunction unless there is a reasonable probability that plaintiff will be successful in the assertion of his rights. [Citations.] As was said in *Family Record Plan, Inc.* v. *Mitchell* (1959) 172 Cal.App.2d 235, 242 [342 P.2d 10], 'In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion [citation] and it must then be exercised in favor of that party [citation].' " The foregoing thus answers the additional claim by the District that it has answered the complaint on file and thus the issuance of the injunction gave no heed to the "equities" of the whole controversy.

█ As its final point the District complains of the manner in which the hearing was conducted on January 15, 1970; among other things, says the District, the court abused its discretion "by restricting appellant's arguing or presenting witnesses." As is our duty, we have familiarized ourselves with the record and there is no warrant for this claim, particularly for the statement in the District's brief that "the court did not know what the issues were in this case," if only in light of the fact that the trial judge had previously presided over two contested proceedings in this same litigation. Further illustrating the conclusion that this last point lacks merit

---

[1]The cited case was quoted more recently in *Weingand* v. *Atlantic Sav. & Loan Assn.,* 1 Cal.3d 806, 820 [83 Cal.Rptr. 650, 464 P.2d 106], where the court again gave approval to the concept that insolvency is related to irreparable injury. (Pp. 819-820.)

is the absence of any showing that the District called any witnesses at the hearing or made any offer of proof as to what they would testify (if called). It appears that the hearing was confined to the opposing declarations and points of law pertaining thereto.

The order is affirmed.

Wood, P. J., and Thompson, J., concurred.