Filed 3/5/15

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

| | |
|---|---|
| ANTONIO PULIDO et al., | C072284 |
| Cross-complainants and Respondents, | (Super. Ct. No. CV 34248) |
| v. | |
| ALFRED ROBERT PEREIRA, JR., Individually and as Trustee, etc., | |
| Cross-defendant and Appellant. | |

     APPEAL from a judgment of the Superior Court of Calaveras County, John E. Martin, Judge.  Affirmed.

     Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Cross-defendant and Appellant.

     Law Offices of William E. Barnes, Mark H. Salyer and William E. Barnes for Cross-complainants and Respondents.

---

* The Reporter of Decisions is directed, pursuant to California Rules of Court, rules 8.1105 and 8.1110, to publish this opinion with the exception of parts II and III of the discussion.

1

This action began as one by several neighboring property owners to establish an easement for the purpose of access to their properties over land owned by Alfred Robert Pereira, Jr. (appellant). The property owners brought the action in 2007, following Pereira's purchase of his property in 2006 and subsequent blocking of the entrance to Quartz Hill Drive, over which the neighbors claimed they had a prescriptive easement by virtue of their use and the use of their predecessors in interest for access to their properties.

The Pulidos (respondents) were named defendants in the suit by the neighbors, but no allegations of wrongdoing on the Pulidos' part were included in the complaint. The Pulidos filed a cross-complaint against Pereira, alleging their right to an easement across Pereira's property on several theories, including an easement by prescription. This appeal involves only the Pulidos' cross-complaint.

The trial court found the Pulidos had satisfied their burden of proving the continuous, open, and notorious use of Quartz Hill Drive for the five-year prescriptive period. It granted a permanent injunction against Pereira "from interfering with the PULIDOS use and enjoyment of the easement across PEREIRA's realty as described and adjudged herein." Pereira argues there was insufficient evidence to support the trial court's finding that the Pulidos and their predecessors used the road openly, notoriously, and continuously for a period of five years. We shall conclude the evidence was sufficient and we will affirm the judgment.

In the published portion of this opinion, we shall conclude that Civil Code section 1009, which prevents the use of private property for recreational purposes by members of the public from ripening into a permanent right, is inapplicable to the facts of this case because the Pulidos claim a private prescriptive easement for the purpose of accessing their own property.

## FACTUAL AND PROCEDURAL BACKGROUND

The Pulidos purchased property in Calaveras County in 2001. When Antonio Pulido first visited the property he took Hogan Dam Road and turned off onto Quartz Hill Drive to access the property. There was no gate where he turned onto Quartz Hill Drive. When the Pulidos purchased their property, Dennis Lee owned the property that was later purchased by Pereira. The Pulidos bought the property with the intent to build a house on it. In the meantime, they were using the property for target shooting. Antonio Pulido went to the property once or twice a month to walk around and shoot targets. Every time the Pulidos went to the property they had to untie a chain strung between two posts at the entrance to Quartz Hill Drive off of Hogan Dam Road.

In 2007 the Pulidos' neighboring property owner, Pereira, informed him that he was going to put a lock on the gate. Antonio Pulido told Pereira to give him a key to the gate if he locked it. Pereira said he would think about it. The Pulidos continued to use Quartz Hill Drive to access their property, until one day they arrived at the gate and a woman there told them a court case had been filed and they were not to use the road anymore. Pereira later installed a lock and dug a trench across Quartz Hill Drive.

Pereira's actions in blocking Quartz Hill Drive affected several of the neighbors in the area, and on November 28, 2007, Roman and Rosa Olavarrieta and Gary and Rachael Fong, joint owners of a neighboring property, filed a complaint to prevent Pereira from blocking their access to Quartz Hill Drive, and to determine their right to a prescriptive easement. Neighboring property owners Barbara Glenn, Erasmo Olavarrieta, and Donna Pyeatt were later added as plaintiffs in the action. The Pulidos were named defendants in that action.

The Pulidos cross-complained against Pereira. They sought a determination that they owned an easement over Quartz Hill Drive to access their property. They alleged several theories by which they were entitled to such easement: (1) easement by

3

implication, (2) easement by implied dedication, (3) easement by prescription, (4) easement by necessity, and (5) equitable easement.

Following trial on the Pulidos' cross-complaint, the court's tentative decision determined the Pulidos had established a prescriptive easement over Quartz Hill Drive. The trial court stated that "[t]he Pulidos['] use, together with that of their predecessors, has satisfied the burden of proving continuous use of Quartz Hill Drive for the five year prescriptive period." The trial court found there had been no easement to the public by implied dedication. Because of the finding of prescriptive easement, the court stated there was no need to resolve the issue of an equitable easement. The trial court made no findings with respect to the Pulidos' claim of easement by implication or by necessity. The trial court indicated it would grant the Pulidos a permanent injunction preventing Pereira from unreasonably interfering with the use and enjoyment of their easement over Quartz Hill Drive across the Pereira parcel.

Judgment was entered on the cross-complaint in favor of the Pulidos for an easement by prescription for ingress and egress over Quartz Hill Drive on Pereira's property. Pereira was permanently enjoined from interfering with the Pulidos' use and enjoyment of the easement, and the Pulidos were awarded damages in the amount of $1. It is from this judgment on the cross-complaint that Pereira appeals.

DISCUSSION

"The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years." (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570.) Pereira raises two primary issues on appeal. First, he argues Civil Code section 1009, which provides that the public's use of another's property for recreational purposes will never ripen into a vested right, prevented the Pulidos from acquiring a prescriptive easement. Second, he argues

4

there is no substantial evidence to support a finding of open, notorious, continuous, and uninterrupted use of the road for five years by the Pulidos or their predecessors.

## I

## Civil Code Section 1009 Has No Application Under These Circumstances

Civil Code section 1009 provides in relevant part:

"(a) The Legislature finds that:

"(1) It is in the best interests of the state to encourage owners of private real property to continue to make their lands available for public recreational use to supplement opportunities available on tax-supported publicly owned facilities.

"(2) Owners of private real property are confronted with the threat of loss of rights in their property if they allow or continue to allow members of the public to use, enjoy or pass over their property for recreational purposes. [¶] . . . [¶]

"(b) . . . [E]xcept as otherwise provided in subdivision (d), no use of such property by the public after the effective date of this section shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use, made by the owner thereof in the manner prescribed in subdivision (c) of this section, which has been accepted by the county, city, or other public body to which the offer of dedication was made, in the manner set forth in subdivision (c)."

As Pereira interprets this section, the Pulidos and their predecessors in interest were prevented from creating a prescriptive easement over Quartz Hill Drive because they used the road to access their own property, and they used their own property for recreational purposes, i.e., shooting guns, walking around, and picnicking. Pereira claims that his neighboring property owners passed over his property for recreational purposes as defined in the statute, when they passed over his property in order to use their own property for recreational purposes. This presents an issue of statutory construction in which we must determine whether the phrase "pass over their property for recreational purposes" includes a neighboring property owner passing over the property of another for

5

the purpose of recreating on his or her own property.  We apply a de novo standard of review for this issue of statutory construction.  (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 210.)

"In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.  [Citation.]  'We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citations.]  If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs.  [Citations.]  If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history.  [Citation.]  In such cases, we ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' [Citation.]"  (*Estate of Griswold* (2001) 25 Cal.4th 904, 910-911.)

"An ambiguity arises when language is reasonably susceptible of more than one application to material facts."  (*California State Auto. Assn., Inter-Ins. Bureau v. Superior Court* (1986) 177 Cal.App.3d 855, 859, fn. 1.)  The language of Civil Code section 1009 is arguably ambiguous as applied here, making it necessary to determine whether the statute applies where a property owner uses the property of another by passing over such property in order to recreate on the owner's own private property.

The Legislature's intent in passing Civil Code section 1009 is expressed in the statute itself.  The Legislature intended to encourage landowners to allow recreational use of their land without the threat of the public obtaining an interest in the property as a result of the use.  (*Bustillos v. Murphy* (2002) 96 Cal.App.4th 1277, 1280 (*Bustillos*).)  In subdivision (b) of Civil Code section 1009, the phrase "no use of such property by the public . . . shall ever ripen to confer upon the public . . . a vested right to continue to make such use permanently," the "use of such property" refers back to subdivision (a)(1),

6

which explains that the subject of the statute is the public recreational use of private real property.

Civil Code section 1009 does not apply here because there is no question of public use. Rather, this is a matter of a private prescriptive easement between neighboring landowners. Also, Civil Code section 1009 does not apply because the recreation taking place is neither on Pereira's property, nor is Pereira's property being passed over by the public to reach a public recreational area.

Pereira cites *Bustillos*, *supra*, 96 Cal.App.4th 1277 in support of his argument that Civil Code section 1009 applies to private easements. This is not a correct reading of *Bustillos*. Bustillos and others used an undeveloped property that was adjacent to a residential development for recreational purposes. (*Bustillos,* at p. 1279.) The undeveloped property was owned by Murphy. (*Ibid*.) Bustillos argued he was entitled to a private easement, and that Civil Code section 1009 did not bar such an easement because the section was applicable only to public easements. (*Bustillos,* at p. 1279.) The court did not hold that Civil Code section 1009 applies to private easements, as Pereira contends, but that Bustillos's interest was indistinguishable from the public generally, thus he could not claim a private easement. "The effect of granting a prescriptive easement in this case would mean that Bustillos, as well as other members of the public, would gain a permanent right to use Murphy's property for recreational purposes. There is nothing 'private' about the prescriptive easement sought here or anything to distinguish Bustillos's situation from that contemplated by [Civil Code] section 1009." (*Bustillos,* at p. 1281.)

This case is unlike *Bustillos* because the Pulidos' interest in the easement across Pereira's property is entirely distinguishable from the interest of the public generally. The Pulidos seek a right of way easement to access their own property. That makes their interest distinguishable from the interest of the public at large. They are not merely passing through Pereira's property because it provides access to a public recreational

7

area.  Civil Code section 1009 was directed at encouraging owners to make their property available for "public recreational use . . . ."  (Civ. Code, § 1009, subd. (a)(1).)  It has no application here, where the use is private, and no recreation is taking place on Pereira's property.

## II
### Sufficient Evidence of Prescriptive Easement

#### A.
#### Additional Facts

The party claiming a prescriptive easement, the Pulidos here, "must show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years."  (*Warsaw v. Chicago Metallic Ceilings, Inc., supra,* 35 Cal.3d at p. 570.)  Because the trial court found a prescriptive easement based on the use of the road by the Pulidos and their predecessors, we relate additional facts regarding the historic use of the road.

Quartz Hill Drive, the easement in question, intersects with Hogan Dam Road.  Quartz Hill Drive runs generally north to south, with Hogan Dam Road at its north end.  Daniel White testified that his parents purchased a parcel on Quartz Hill Drive in 1945.  That parcel lies south of the property now owned by the parties to this action.  In 1988, White's father George Glenn, together with Edward Ratliff (the Pulidos' predecessor) and Malcolm Diller (Pereira's predecessor) submitted a private street naming application to Calaveras County.  The application could be signed only by the property owners who had been or would be using the road, and had to be signed by at least 50 percent of the affected property owners.

White testified the reason for filing the application was to have a mailing address.  His parents' address became 8310 Quartz Hill Drive.  Although they did not live on the property, they visited it every weekend, and used Quartz Hill Drive to reach their property.  His uncle lived in a trailer on the property during the '70's up to 1989.  White

8

lived in a trailer on the property during the mid-1980's as well. White put a street sign up on Quartz Hill Drive in 1988.

Diller, Pereira's predecessor, never interfered with his use of Quartz Hill Drive. Diller sold the property to Dennis Lee in the 1990's. Lee put telephone poles up at the entrance to Quartz Hill Drive with a cable strung between them, but did not lock anything. Lee never complained about his use of Quartz Hill Drive. Lee put up the poles and cable because they were having problems with kids partying and people using the properties as a dump.

Phyllis Mojarro and her husband Richard purchased their property in 1990. Two other couples, the Billings and Madrids purchased the property with them. They owned the property that was later sold to the Pulidos. Before they bought the property they inspected it, using Quartz Hill Drive to access the property. Thereafter they used Quartz Hill Drive every time they went to their property, from the purchase in 1990 to the time they sold it in 2001. No one ever tried to stop them from using the road. Phyllis Mojarro went to the property with her husband until he passed away in 1992. After that, she did not go as much, but her daughters used the property. She probably went to the property a total of 15 times, but her husband and daughters went more often. She thought they had the right to use the road.

Roman Olavarrieta purchased his property off of Quartz Hill Drive in 1990. The first time he visited the property, he was taken there by Richard Mojarro, the Pulidos' predecessor in interest. Mojarro used Quartz Hill Drive to access the property. At that time Dennis Lee owned the property now owned by Pereira. Olavarrieta testified that he always used Quartz Hill Drive to access his property, and he thought it was a public road.

B.
Standard of Review

Pereira argues there was not substantial evidence to support the finding of a prescriptive easement. In reviewing a judgment for substantial evidence, we are required

to resolve all conflicts in evidence in favor of the respondent and indulge all legitimate and reasonable inferences to uphold the verdict. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.) "It is an elementary, but often overlooked, principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Ibid*.)

Preliminarily, we consider the role of the statement of decision and Pereira's objections to the statement of decision as they relate to our substantial evidence review. Pereira requested a statement of decision regarding the evidentiary bases of the court's decision. (Code of Civ. Proc., § 632.) The trial court's statement of decision set forth evidence that Pereira's and the Pulidos' remote predecessors submitted a private street naming application to Calaveras County in the late 1980's, which required 50 percent of the respective property affect property owners to join in the submission. The court inferred from this that Pereira's predecessors acknowledged the right of the Pulidos' predecessors to use the road. The trial court also noted the testimony of Phyllis Mojarro, who sold the property to the Pulidos, that she and her family routinely accessed their property via Quartz Hill Drive without interference from the purchase in 1990 until they sold the property in 2001. Antonio Pulido testified he visited the property on a regular basis via Quartz Hill Drive from 2001 until the spring of 2007, when Pereira blocked the entrance to the road.

Pereira argues that because he requested a statement of decision pursuant to Code of Civil Procedure section 632, and made objections to the statement of decision pursuant to Code of Civil Procedure section 634, we may not presume the trial court relied on any evidence that was not referenced in the statement of decision. This is incorrect.

10

"Ordinarily, when the court's statement of decision is ambiguous or omits material factual findings, a reviewing court is required to infer any factual findings necessary to support the judgment." (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494.) This is the doctrine of implied findings. The doctrine of implied findings may be avoided by taking steps outlined in Code of Civil Procedure sections 632 and 634. (*Ibid.*)

Code of Civil Procedure section 632 provides in relevant part that the trial court "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." As indicated, Pereira requested a statement of decision. Code of Civil Procedure section 634 provides that if "a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . . it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue."

Pereira raised a number of objections to the statement of decision that were evidentiary in nature. He objected that the statement of decision did not set forth the evidence in support of the finding of continuous use after 1990, that the statement of decision did not set forth the evidence of continuous use after June 2006, that the statement of decision did not cite the evidence showing the frequency of use, that the statement of decision did not cite the use to which the Pulidos put the easement, and that the statement of decision did not state the evidence to support the finding of open, notorious, and clearly visible use.

A statement of decision need only state findings with respect to ultimate facts, not evidentiary facts. (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125.) An ultimate fact is an element of a cause of action, and an evidentiary fact is one which supports the existence of the ultimate fact. (*Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 888.) Here, the statement of decision expressed the trial court's

11

findings on the ultimate facts that the Pulidos' and their predecessors' use of Quartz Hill Drive was continuous, open notorious, and clearly visible to the owner(s) for the five-year prescriptive period. No more was necessary. Since the statement of decision made findings on these ultimate facts, and such findings were unambiguous and resolved the controverted issues, it was sufficient to bring the doctrine of implied findings into play. (*Yield Dynamics, Inc. v. TEA Sys. Corp.* (2007) 154 Cal.App.4th 547, 559.)

In any event, we need not rely on the doctrine of implied findings precisely because the trial court's findings were unambiguous and resolved the controverted material issues in the case. That said, in reviewing the record for substantial evidence to support the judgment we are still required to review the entire record to determine whether substantial evidence supports the judgment, and to resolve evidentiary conflicts in support of the judgment. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631.) We are not limited in that task to the evidentiary facts set forth in the statement of decision.

## C.
### Notice

Pereira claims there was insufficient evidence he or his predecessor had notice of the use of the road for the prescriptive period. Citing *MacDonald Properties, Inc. v. Bel-Air Country Club* (1977) 72 Cal.App.3d 693, 701, he claims that in order to establish a prescriptive easement, the servient property owner must have actual knowledge of the use. This is not the law. The servient owner must have knowledge of the adverse use, but the " 'knowledge may be either actual or constructive, resulting from notice either express or implied.' " (*Gerhard v. Stephens* (1968) 68 Cal.2d 864, 903.)

Pereira argues there was no evidence he had notice of any easement for the benefit of the Pulidos until February 2007. He references his own testimony that he viewed a county parcel map prior to purchase indicating there were no easements "to be dedicated," that he would not have purchased the property had he known there were

easements, and that Dennis Lee who sold him the property told him there was only one neighbor (not the Pulidos) who used the road. He also references the testimony of Nancy Randolph, who testified she visited the parcel with Pereira before he purchased it and never saw anyone using the road.

Pereira fails to mention Antonio Pulido's testimony regarding his use of the property. He testified that from the time he purchased the property on August 8, 2001, he went to the property at least once a month, and sometimes more often. He testified he thought he had a right to use the road. He testified he continued to use Quartz Hill Drive to access his property even after Pereira put barbed wire across the entrance to the road. He met Pereira personally for the first time in February or March 2007, when Pulido was having his property surveyed. Even then, Pereira never told Pulido not to use the road, only that he (Pereira) was going to lock the entrance to the road. Pulido told Pereira to give him a key to the lock, and Pereira replied that he might build another road. Pulido continued to access his property by Quartz Hill Drive until a woman later told him a court case had been filed and that he was not to use the road. After that he was able to access his property only on foot.

The trial court is justified in imputing constructive knowledge to the servient owner based on the use of the easement by the party claiming a prescriptive easement. (*O'Banion v. Borba* (1948) 32 Cal.2d 145, 149.) Notice can be inferred or implied from visible, open, and notorious use. (*Applegate v. Ota* (1983) 146 Cal.App.3d 702, 709.) Here, there was evidence that the Pulidos used the easement regularly and openly. Antonio Pulido testified he saw Pereira many times using Quartz Hill Drive across their (the Pulidos') property, even though Pereira claimed never to have seen Pulido. Coupled with the fact that the road had visible track marks and that Pereira must have been aware someone was using the road since he strung barbed wire across the entrance to the road, there was sufficient evidence from which the trial court could conclude Pereira had notice of his neighbor Pulidos' use of the road.

13

For the same reasons, there was sufficient evidence to support the trial court's finding that the Pulidos' use of the property conferred notice of use to Pereira's predecessor in interest, Dennis Lee. Lee owned Pereira's parcel from 1990 to 2006. Pulido used to see someone by the road when Lee owned the property, but he never met him. Lee was aware the neighbors were using the road, because he put some posts up across Quartz Hill Drive and strung a cable across it, but told one neighbor (Olavarrieta) he was not going to lock it so that "you guys can come in and out . . . ." Lee also gave the neighbor permission to blade the road through Lee's property. This was sufficient evidence that Lee had actual knowledge the surrounding property owners were using the easement, and consequently that the Pulidos and their predecessors were using the easement.

The evidence of use is sufficient to establish that Pereira and his predecessors had notice that the Pulidos and their predecessors were openly using Quartz Hill Drive to access their property.

D.

The Pulidos' Continuous and Uninterrupted Use for Five Years

Pereira argues there was insufficient evidence the Pulidos used the road between March 2006 to the spring of 2007. As the Pulidos purchased their property in August 2001, the five-year prescriptive period would have been completed in August 2006 based on the Pulidos' use alone. There was sufficient evidence from which the trial court could have concluded the Pulidos used the easement between March 2006 and August 2006. Pereira testified he purchased the property in March 2006, and that he put barbed wire across the poles at the entrance of Quartz Hill Drive around April or May 2006. When the barbed wire was constantly being cut, he replaced it with a locked chain around July 2006. Antonio Pulido testified he recalled that Pereira put barbed wire across the poles after he bought the property. He testified that after Pereira put up the barbed wire, he

14

would untie the barbed wire to pass through, then put the wire back up. Since Pulido saw the barbed wire, he must have used the property during the time Pereira had the wire up.

There is a conflict in the evidence as to when Pereira put up a chain with a lock. Pereira testified he put up a locked chain in July 2006. Pulido testified Pereira told him he was planning to lock the chain when he met Pereira for the first time in February 2007. Prior to that time there was no lock. Pulido testified he was able to access his property via the easement until he went to use it one time after February 2007, and a woman there told him there was a court case and that he was not to use the road. In reviewing the sufficiency of the evidence we resolve conflicts in the evidence in favor of the judgment. (*Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.* (2007) 148 Cal.App.4th 937, 951.) We assume Pulido was able to access the property by untying the barbed wire until February 2007, which was well past the 5-year limitations period, and that he continued to access the property via the road until sometime after his meeting with Pereira.

Accordingly, there is sufficient evidence of continuous use from the Pulidos' use of the property alone.

### E.
#### The Pulidos' Predecessors' Continuous Uninterrupted Use for Five Years

Having determined the evidence was sufficient to show that the Pulidos' use alone was continuous and uninterrupted for five years, we need not determine whether there was sufficient evidence that their predecessors' use was also continuous and uninterrupted for five years. However, the Pulidos are entitled to take advantage of the use made by their predecessors in interest, and there was evidence that their predecessors used Quartz Hill Drive to access the property. (*Miller v. Johnston* (1969) 270 Cal.App.2d 289, 295.) The Pulidos bought their property from the Mojarros, Madrids, and Billings, who were co-owners of the property. The Mojarros, Madrids, and Billings owned the property from 1990 until they sold it to the Pulidos in 2001.

15

Pereira claims any prescriptive easement that might have existed was extinguished in 1992, when Richard Mojarro died. However, Olavarrieta testified he saw Don Madrid, the Mojarros, and Merle Billings on the property, and that Billings was on the property shortly before the Pulidos bought it in 2001. He testified that Phyllis Mojarro and her daughters used the property after Richard Mojarro died, and that he also saw Don Madrid and Billings there after Richard Mojarro died. Because Quartz Hill Drive was the only road accessing the property, it was reasonable for the court to infer the Pulidos' predecessors used the easement.

## F.
### The Pulidos Could Perfect their Easement After Pereira's Purchase

Pereira argues that the Pulidos should not be able to perfect a prescriptive easement by their own use that had not been perfected when Pereira purchased his property, and that no easement should be enforced against him as a bona fide purchaser without notice of an easement. Pereira cites no authority for the first of these arguments, and we are aware of none.

As to Pereira's second argument, there was sufficient evidence that Pereira was on inquiry notice of the easement. The presence of vehicle tracks is sufficient to put a purchaser on inquiry as to the existence of a roadway easement. (*Wallace v. Whitmore* (1941) 47 Cal.App.2d 369, 375.) Pereira claimed there was no roadway when he purchased the property, but admitted there was a trail. Other witnesses testified that Quartz Hill Drive had been bladed, and a picture of Quartz Hill Drive admitted as an exhibit bears out this description. The trial judge was aware of the appearance of Quartz Hill Drive because he visited the site before rendering a decision. Additionally, an aerial map from 1977 clearly shows a road, a private street naming application for Quartz Hill Drive was filed with Calaveras County in 1988 signed by Pereira's predecessor (Diller)

16

and the Pulidos' predecessor (Ratliff), and an assessor's map names the road Quartz Hill Drive. Such evidence was sufficient to put Pereira on inquiry notice of the easement.[1]

### III
### Pereira Has Forfeited any Claim of Surcharge

Pereira argues the trial court's judgment allows greater use than has previously been made of the easement. He argues the judgment prohibits him from interfering with "any" use by the Pulidos. He is incorrect, inasmuch as the judgment merely enjoins him "from interfering with the PULIDOS use and enjoyment of the easement across PEREIRA's realty as described and adjudged herein." Moreover, Pereira's arguments below were confined to his claim that no easement by prescription existed. He never argued that if such an easement existed the Pulidos had increased or changed the use of the easement. He never objected to this language in the tentative decision or the proposed judgment. Having not raised the argument below, we will not consider it for the first time on appeal. (*Champion Home Builders Co. v. Sipes* (1990) 219 Cal.App.3d 1415, 1424.)

---

[1] Having determined there was sufficient evidence to support the trial court's finding of a prescriptive easement, we need not consider the Pulidos' arguments that alternative grounds existed by which the trial court could have found an easement. Moreover a respondent who has not appealed from the judgment may not urge error on appeal. (*California State Employees' Assn. v. State Personnel Bd*. (1986) 178 Cal.App.3d 372, 382, fn. 7.)

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

　　　　　　　　　　　　　　　　　　　　　BLEASE　　　　　　, Acting P. J.

We concur:

　　　BUTZ　　　　　　　　, J.

　　　MURRAY　　　　　, J.